PEOPLE v DOBEK

Docket No. 264366. Submitted January 9, 2007, at Grand Rapids.
    Decided January 30, 2007, at 9:00 a.m. Leave to appeal sought.
  Andrew N. Dobek was convicted by a jury in the Livingston Circuit
    Court of five counts of first-degree criminal sexual conduct (CSC
    I), MCL 750.520b(1)(a); three counts of second-degree criminal
    sexual conduct (CSC II), MCL 750.520c(1)(a); and two counts of
    assault with intent to commit criminal sexual conduct involving
    sexual penetration, MCL 750.520g(1), based on incidents involving
    his minor stepdaughter in 1995. The trial court, David J. Reader,
    J., sentenced the defendant to concurrent terms of imprisonment
    that were at the upper end of the applicable judicial sentencing
    guidelines ranges. The defendant appealed his convictions on the
    grounds of prosecutorial misconduct, instructional error, and
    evidentiary errors, and also appealed his sentences on the ground
    that their length was improperly affected by his protestations of
    innocence.

    The Court of Appeals held:

    1. The defendant's claims of prosecutorial misconduct were
waived, not established, or related to conduct that did not deprive
the defendant of his right to a fair and impartial trial. The
prosecutor did not imply that she had some special knowledge that
the witnesses were testifying truthfully, and her references to her
experience as a prosecutor and her allegedly denigrating remarks
in relation to the defendant and his defense were appropriately
responsive to the defendant's own arguments, not plainly errone-
ous, or could have been cured with a timely instruction. The
prosecutor may have engaged in unnecessary editorializing during
the questioning of the victim's mother, but no misconduct re-
sulted, and the challenged question, while leading, was permissible
during cross-examination, as was the prosecutor's somewhat ar-
gumentative questioning of the defendant. The defendant's con-
tention that the prosecutor inappropriately informed the jury that
she intervened to prevent the victim's mother from interfering
with the victim is without merit in light of the facts that the
defendant initiated this line of testimony and the prosecutor
repeatedly attempted to limit it. The prosecutor did not engage in

impermissible bolstering of the victim's testimony by her good-faith effort to refresh the victim's memory or by eliciting testimony from an expert in response to the defense counsel's questions about deception. The prosecutor's questions about the defendant's religious beliefs did not deny the defendant a fair and impartial trial because the trial court swiftly halted that line of questioning, and the substance of the defendant's beliefs was not explored beyond what the defendant himself volunteered. The admission of testimony by a detective regarding "delayed disclosure" by sexual abuse victims does not warrant reversal because, to the extent that expert testimony was required, the record establishes that the detective was more than qualified to give the testimony he presented, and the prosecutor elicited the testimony in good faith. The prosecutor's elicitation of testimony regarding a fight that the victim's biological father initiated with the defendant did not suggest that the defendant had a violent character, and the prosecutor did not act in bad faith in eliciting testimony that the defendant had hit the victim's brothers with a belt in light of the fact that the trial court allowed the questioning. The challenged testimony relating to complaints to the Family Independence Agency pertained to one of the defendant's adult sons and clearly indicated that no such complaints had been made with respect to the defendant. The prosecutor's brief and innocuous reference to her heart breaking was not made in connection with an effort to seek sympathy for the victim, and does not warrant reversal in light of the trial court's instruction to the jury to base its verdict solely on the evidence.

2. The trial court did not err in instructing the jury that the prosecution was not required to prove the date and time that the charged offenses were committed, because time is not of the essence in criminal sexual conduct cases involving child victims, even when a defendant has offered an alibi defense. The jury was properly instructed that the prosecutor had the burden of proving beyond a reasonable doubt that the offenses occurred before the victim had turned 13 years old.

3. The admission of other acts involving the defendant and the victim does not require reversal on procedural grounds because, although the defendant was not given notice before trial that the prosecutor intended to introduce such evidence, no procedural objection was made and the record does not show that the defendant was actually innocent or that the error seriously affected the fairness of the proceedings, particularly in light of the fact that the defendant himself relied on the large number of

incidents to cast doubt on the victim's credibility. The admission of other-acts evidence relating to the victim and to the defendant's babysitter and sister-in-law does not require reversal on substantive grounds because it was not offered to show the defendant's character or his propensity to commit the crimes, but rather to establish that the defendant had a scheme, plan, or system to commit the charged crimes, as well as the intent and opportunity to do so.

4. The trial court did not abuse its discretion in excluding expert testimony that the defendant did not fit the profile of a typical sex offender. The proffered testimony would not have given a comparison of actual behaviors to explain the defendant's actions, but rather would have offered a comparison of psychological test results from the defendant and known sex offenders. The expert acknowledged that the tests were subjective and subject to manipulation, and that using the tests to identify sex offenders is controversial within the psychological community. Accordingly, the proffered testimony was neither sufficiently scientifically reliable nor supported by sufficient scientific data, and its admission would not have assisted the trier of fact to understand the evidence or determine a fact in issue; rather, any arguable probative value would have been substantially outweighed by the danger of unfair prejudice to the prosecution, confusion of the issues, or misleading the jury.

5. The trial court did not depart from the applicable judicial guidelines in sentencing the defendant, and the record does not indicate that the defendant maintained his innocence after he was convicted, that the trial court attempted to make the defendant admit guilt, or that the sentence would not have been as severe had the defendant affirmatively admitted guilt. Therefore, resentencing on the ground that the trial court improperly based its sentence on the defendant's refusal to admit guilt is unwarranted.

6. Reversal on the basis of cumulative error is unwarranted because the cumulative effect of the fairly minor instances of prosecutorial misconduct at issue did not deny the defendant a fair trial.

Affirmed.

1. JURY INSTRUCTIONS — CRIMINAL SEXUAL CONDUCT — CHILD VICTIMS — DATE AND TIME.

A trial court may instruct a jury that the prosecution is not required to prove the date and time that charged criminal sexual conduct offenses involving a child were committed because time is not of the essence in criminal sexual conduct cases involving child victims, even if the defendant has offered an alibi defense.

2. EVIDENCE — EXPERT TESTIMONY — SEX-OFFENDER PROFILING — ADMISSIBILITY.

Expert testimony regarding sex-offender profiling is properly excluded on the grounds that it is not scientifically reliable, would not assist the jury in understanding the evidence or determining a fact in issue, and would cause unfair prejudice to the prosecution (MRE 702).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David L. Morse*, Prosecuting Attorney, and *William J. Vailliencourt, Jr.*, Assistant Prosecuting Attorney, for the people.

*Hertz, Schram & Saretsky, P.C.* (by *Walter J. Piszczatowski* and *Michael J. Rex*), for the defendant.

Before: MURPHY, P.J., and SMOLENSKI and KELLY, JJ.

MURPHY, P.J. Following a jury trial, defendant was convicted of five counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (sexual penetration with person under 13 years of age); three counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (sexual contact with person under 13 years of age); and two counts of assault with intent to commit criminal sexual conduct involving sexual penetration, MCL 750.520g(1). Defendant appeals as of right, claiming numerous instances of prosecutorial misconduct, instructional error relative to the dates of the offenses, improper admission of other-acts evidence, evidentiary error in the exclusion of expert testimony opining that defendant did not fit the profile of a sex offender, sentencing error based on his protestations of innocence affecting the length of the sentences, and cumulative error. We affirm, holding that claims of prosecutorial misconduct were waived, not shown, or did not amount to a denial of defendant's right to a fair and impartial trial; that the trial court correctly in-

structed the jury that the prosecutor was not required to prove the dates of the offenses; that the other-acts evidence was admitted for proper purposes and in accord with MRE 401 to 404; that defendant's sentences were not affected by alleged claims of innocence; and that there was no cumulative error requiring reversal. We further hold that the proffered expert testimony regarding sex-offender profiling was properly excluded because it has not reached a level of scientific reliability sufficient to permit admission, there was insufficient supporting data, and the testimony would not have assisted the jury in understanding the evidence or in determining a fact in issue; rather, the proffered evidence would have confused the issues, misled the jury, and caused unfair prejudice to the prosecutor.

### I. FACTUAL OVERVIEW

All the convictions arise out of allegations by defendant's stepdaughter concerning improper and illegal sexual conduct by defendant that occurred in 1995 when the victim was 12 years old. She was 22 years old when trial took place in May of 2005. Although there were ten specific criminal counts charged against defendant, the complainant testified that defendant sexually molested her hundreds of times over the years between, roughly, the ages of 8 and 13. The charged offenses occurred in the Dobek family home during two separate incidents on different dates, the first in defendant's bedroom and the second in the kitchen. The sexual conduct involved attempted vaginal and anal intercourse, fellatio, cunnilingus, digital penetration of the victim's vagina, genital fondling, and, in general, inappropriate touching.

The prosecution presented the testimony of the victim, a police officer who initially took the victim's statement, and Detective Bruce Leach, who extensively interviewed the victim and handled the investigation of the case. Defendant presented the testimony of his wife,[1] his brother, two adult daughters, a physician who saw the victim in 2000, defendant's ex-wife, and defendant's sister-in-law, who was declared a hostile witness. Defendant himself also took the stand. He denied any sexual misconduct, and defendant's witnesses, in general, testified that they never observed any inappropriate behavior on defendant's part and testified to defendant's good character. On rebuttal, the prosecution presented the testimony of a former family babysitter. Defendant was convicted and sentenced to 25 to 40 years' imprisonment for the CSC I convictions, 10 to 15 years' imprisonment for the CSC II convictions, and 6 to 10 years' imprisonment for the sexual assault convictions, all sentences to be served concurrently.

## II. ANALYSIS

### A. PROSECUTORIAL MISCONDUCT

Defendant cites numerous instances in which the prosecutor allegedly engaged in misconduct. Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. *People v Jones*, 468 Mich 345, 354; 662 NW2d 376 (2003); *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or

---

[1] She is the victim's mother.

innocence. *People v Rice (On Remand)*, 235 Mich App 429, 438; 597 NW2d 843 (1999). Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). "The propriety of a prosecutor's remarks depends on all the facts of the case." *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel. *Jones, supra* at 353.[2] With these guiding principles in mind, we shall now examine the specific arguments raised by defendant.

We first address the allegations of prosecutorial misconduct that defendant claims arose out of the prosecutor's closing argument. We conclude that, for the most part, defendant waived claims of misconduct relative to closing argument. After closing arguments were presented and jury instructions were given, the trial court requested the parties to place any objections to the instructions on the record, and defendant did so. Defendant then proceeded to move for a mistrial based on prosecutorial misconduct during closing arguments. Defendant first contended that the prosecutor improperly interjected defendant's possible loss of freedom, which issue was not raised on appeal. Defendant next

---

[2] "Under the doctrine of invited response, the proportionality of the response, as well as the invitation, must be considered to determine whether the error, which might otherwise require reversal, is shielded from appellate relief." *Jones, supra* at 353.

maintained that the prosecutor had suggested to the jury that defendant had a burden of proof that needed to be established, which issue was also not raised on appeal. The motion for mistrial was denied. The trial court then asked if counsel had anything else, and defense counsel stated, "No, Your Honor." Given that alleged misconduct during closing arguments was specifically being addressed, there was a waiver of any other misconduct claims with respect to closing arguments, except for one argument that was preserved when defendant particularly objected to an offending comment during closing arguments themselves. In *People v Carter*, 462 Mich 206, 215, 219; 612 NW2d 144 (2000), our Supreme Court discussed the principle of waiver:

> Waiver has been defined as "the 'intentional relinquishment or abandonment of a known right.'" It differs from forfeiture, which has been explained as "the failure to make the timely assertion of a right." "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error."
>
> \* \* \*
>
> In the present case, counsel clearly expressed satisfaction with the trial court's decision to refuse the jury's request and its subsequent instruction. This action effected a waiver. Because defendant waived, as opposed to forfeited, his rights under the rule, there is no "error" to review. [Citations omitted.]

Here, defendant affirmatively and intentionally abandoned or relinquished, with one exception, any claims of prosecutorial misconduct arising out of the prosecutor's closing argument when defendant asserted "closing argument" misconduct in the mistrial motion,

cited prosecutorial comments not at issue on appeal, and then expressly stated that there were no further claims.

Moreover, assuming proper preservation or application of the plain-error test used for forfeited claims, *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), reversal would not be warranted because defendant was neither denied a fair trial nor prejudiced. Defendant's claims of improper vouching lack merit given that the challenged comments reflected arguments from the facts and testimony that the witnesses at issue were credible or worthy of belief. *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). The prosecutor did not imply that she had some special knowledge that the witnesses were testifying truthfully. See *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). A prosecutor may not make a factual statement to the jury that is not supported by the evidence, *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003), but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case, *Bahoda, supra* at 282. The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms. *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001). There was no prosecutorial misconduct here. Furthermore, there was certainly no plain error affecting defendant's substantial rights. *Carines, supra* at 763.[3]

---

[3] We also note that the trial court instructed the jury that the statements and arguments by counsel were not evidence, and this instruction was sufficient to eliminate any prejudice that possibly resulted. *Thomas, supra* at 454. Additionally, assuming misconduct, the misconduct was not so egregious that no curative instruction could have counteracted any prejudice; therefore, reversal is unwarranted. *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996).

With respect to the prosecutor's closing and rebuttal remarks regarding the status of the law and her experiences as a prosecutor, the comments were appropriately responsive to defendant's closing comments, *Jones, supra* at 353, did not constitute plain error affecting substantial rights, *Carines, supra* at 763, were harmless, lacking prejudicial effect, MCL 769.26; *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999), or could have been cured with a timely instruction, *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996).

With regard to alleged improper attacks on and the denigration and disparagement of defendant, defense counsel, defense witnesses, and the theory of defense during closing arguments, there was nothing stated that requires reversal. Defendant has not shown plain error affecting his substantial rights. *Carines, supra* at 763. While the prosecutor was aggressive and arguably crossed the line with some of her remarks, other remarks were valid commentary based on the evidence and testimony and inferences arising therefrom. The prosecutor was permitted to argue from the facts that defendant or defendant's witnesses were unworthy of belief. *Howard, supra* at 548. The prosecutor's designation of defense counsel's arguments as "red herrings" did not generate the type of accusatory prejudice decried in *People v Dalessandro*, 165 Mich App 569, 579-580; 419 NW2d 609 (1988). Therefore, defendant's reliance on *Dalessandro* is misplaced. Although the prosecutor's comments might have suggested that defense counsel was trying to distract the jury from the truth, the comments were, in general, properly made in response to defense counsel's suggestion that the prosecutor failed to recognize evidence that was allegedly problematic to the prosecution's theory. See *Watson, supra* at 592-593 (similarly rejecting a defendant's

claim that reversal was warranted on the basis of "red herring" statements made by the prosecutor). Moreover, assuming some of the prosecutor's comments were improper, any prejudicial effect could have been cured by a timely instruction, and, therefore, reversal is unwarranted. *Id.* at 586.

We now address claims of prosecutorial misconduct outside the context of closing arguments. Defendant challenges the prosecutor's questioning of the victim's mother, in which the prosecutor attempted to assail her credibility. Defendant argues misconduct relative to a statement the prosecutor made to the trial court that the victim's mother had given two separate answers to a question, and that a straight answer was needed to get to the truth. The record reflects that the witness, under examination, did not give a straight answer when asked whether she had seen a particular movie.[4] While there may have been some unnecessary editorializing, the prosecutor's statement did not constitute misconduct. Defendant also argues that the following question to the victim's mother was improper: "Now here's the reality, ma'am. Your sister made an allegation about your husband doing something improper to her, correct?" There is nothing improper about this question; it is an acceptable leading cross-examination question.

Defendant also argues that the prosecutor made it known to the jury that she had to personally intervene to prevent the victim's mother from tampering with the victim during a prior courthouse incident. This issue arose during defendant's direct examination of the victim's mother. Having reviewed the pertinent tran-

---

[4] The victim had referred to a particular movie during which she had been sexually and secretly touched by defendant while the victim's mother was present in the room.

script passage, we conclude that reversal is unwarranted. First, it was defense counsel who initiated the testimony regarding the prior courthouse "altercation" between the victim's mother and the prosecutor, and, even after a hearsay objection was sustained, defense counsel proceeded to pursue the line of questioning before the prosecutor interjected another objection and mentioned witness tampering. Second, the prosecutor was clearly concerned about the testimony developing to the point that she, the prosecutor, would be needed as a witness. Defendant's concern is that the jury was left with the impression that the prosecutor possessed information of tampering that was unsuitable for the jury to hear. However, it was the prosecutor who attempted multiple times to stop the testimony regarding the courthouse incident, and the jury was aware of her attempts to preclude the evidence. Therefore, it is difficult to conclude that the jury was left with the impression that something favorable to the prosecution occurred during the incident despite the tampering comment. While the prosecutor should not have made the "witness tampering" statement, defendant was not denied a fair and impartial trial, nor was he prejudiced by the offhanded reference to tampering.

Next, defendant argues misconduct when the prosecutor admonished defendant while he was on the witness stand after he acknowledged receiving a letter from Detective Leach about allegations of misconduct or inappropriate behavior, but did not construe the letter as referring to "sexual" misconduct. The prosecutor stated, "Mr. Dobek, let's not be disingenuous here. You knew what inappropriate behavior . . . meant, correct?" Upon objection, the court told the prosecutor to rephrase the question. While the question was somewhat argumentative, it was cross-examination, and we

fail to see how the question constituted prosecutorial misconduct and denied defendant a fair trial. Reversal is not required.

Defendant further argues that the prosecutor improperly bolstered the victim's testimony when she was being questioned about the second incident in the kitchen. The victim testified that she was wearing a tee shirt and underwear, and when asked whether the underwear stayed on or off, she indicated that it probably stayed on but there was also hesitation and words of uncertainty in her response. Through reference to the preliminary examination, the victim's memory was refreshed, and she recalled that her underwear had been removed. Defendant claims that the prosecutor's effort to refresh the victim's memory constituted prosecutorial misconduct, with the focus of the argument being that the evidence was an improper recorded recollection that lacked adequate foundation. Defendant asserts that the victim gave her answer, the prosecutor did not like it, and then the prosecutor improperly and unnecessarily refreshed her memory. This is essentially an evidentiary issue framed as prosecutorial misconduct. A prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). The victim's testimony was somewhat equivocal, and we do not view the prosecutor's effort to refresh her memory as a bad-faith effort to admit evidence, as the evidence was arguably admissible. See MRE 612 and 803(5).

Defendant next argues that the prosecutor improperly elicited the testimony of Detective Leach in order to bolster the victim's testimony by using Leach as a "human lie detector." Again, this issue is as much an evidentiary issue as it is a prosecutorial misconduct

matter; therefore, we focus on whether the prosecutor elicited the testimony in good faith. *Noble, supra* at 660. It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985); *People v Smith*, 158 Mich App 220, 230-231; 405 NW2d 156 (1987). An expert may not vouch for the veracity of a victim. *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), mod 450 Mich 1212 (1995). Leach testified about his background and experience, the manner in which to properly investigate and interview subjects in criminal sexual conduct cases, his interview of the victim and her demeanor, and delayed disclosure in criminal sexual conduct cases. Only after defense counsel delved into "deception" issues on cross-examination of the detective[5] did Leach testify on redirect that he had no concerns about lying in this case. Defendant did not object to this testimony, nor to the prosecutor's question that elicited the testimony. Assuming plain error, defendant has not established prejudice, actual innocence, or damage to the integrity of the judicial proceedings. *Carines, supra* at 763. Given that Leach was called as a witness by the prosecutor and that a criminal prosecution against defendant was pursued, the jurors surely understood that Leach believed that the victim was telling the truth even without the disputed testimony. Regardless, we cannot conclude that the prosecutor proceeded with the questioning and elicited the testimony in bad faith, especially considering that defendant opened the door on the matter.

---

[5] After Leach acknowledged that the victim appeared uncomfortable, defense counsel asked Leach if, on the basis of his 31 years of police work, people who tell "untrue" things sometimes appear uncomfortable, to which Leach replied, "Sure."

Defendant additionally argues prosecutorial misconduct when the prosecutor, on cross-examination of defendant, asked him if he had practiced his testimony or had gone through it with his attorney and others. A prosecutor should not question a defendant regarding conversations with his or her attorney, as the "attorney-client privilege is fundamental to our system of jurisprudence and the privilege is destroyed if improper inference can be drawn from its exercise." *People v Foster*, 175 Mich App 311, 318; 437 NW2d 395 (1989), overruled on other grounds *People v Fields*, 450 Mich 94, 115 n 24; 538 NW2d 356 (1995).

Defense counsel objected to the prosecutor's line of questioning, and the trial court sustained the objection. Defendant had responded before the court's ruling, and he denied practicing his testimony. The substance of any confidential communications was never broached. Although the prosecutor's line of questioning may have been pursued in bad faith, defendant was not denied a fair and impartial trial under the circumstances. We see no problem with any questions regarding whether defendant talked to other witnesses about testimony because it bore on matters of credibility and bias without offending any attorney-client privilege.

Defendant further argues that the prosecutor improperly questioned him regarding his Catholic faith. A prosecutor may not inquire about the religious beliefs of a witness, or about those beliefs' effect on truthfulness. MCL 600.1436; MRE 610; *People v Leshaj*, 249 Mich App 417, 420; 641 NW2d 872 (2002). We again note that a prosecutor's good-faith effort to admit evidence does not constitute misconduct. *Noble, supra* at 660.

On direct examination by defense counsel, defendant testified as follows:

So I—but also the kids are Catholic and [my wife] is. We go to church. They were brought up with—in the Catholic faith. They went to catechism. They learned all their sacraments and received 'em all.

Therefore, defendant first introduced faith and religion into the trial. On cross-examination, the prosecutor asked defendant whether he was a practicing Catholic and whether he was a member of a Catholic church in the 1990s, to which defendant replied in the affirmative. The prosecutor next asked defendant whether his behavior was consistent with the tenets of the Catholic faith; however, before defendant could answer, defense counsel objected, and the trial court sustained the objection, ordering the prosecutor to stop pursuing the religious line of questioning. That was the last inquiry into religion.

MRE 610 provides that "[e]vidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced." MCL 600.1436 provides, in part, that "[n]o witness may be questioned in relation to his opinions on religion, either before or after he is sworn." Further, our constitution touches on the subject of religion as it relates to court testimony, providing, "No person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief." Const 1963, art 1, § 18.

In *People v Bouchee*, 400 Mich 253; 253 NW2d 626 (1977), the defendant first broached the subject of religion by claiming Catholic church membership and attendance, and by asserting a strict belief in the Bible. The prosecutor and the trial court itself engaged in substantial questioning of the defendant in a manner "designed to elicit an admission from the defendant

that his claimed belief in the Bible was at odds with his testimony that he was willing to have consensual extramarital sexual relations with the complainant." *Id.* at 261-262. The Court acknowledged that the defendant first volunteered testimony regarding his religion for the ostensible purpose of demonstrating that he was a moral, religious, and God-fearing man. *Id.* at 262. However, the defendant's testimony "did not invite or justify the kind of 'clarifying inquiry' made by the court." *Id.* The Court ruled that the prosecutor was fully entitled to challenge the defendant's claim of good character through "evidence of prior convictions, testimony contradicting the claimed church membership and attendance, or reputation evidence tending to disprove the claim of religious, moral and God-fearing qualities." *Id.* But the Court followed by stating:

> It would not have been competent, however, for the prosecutor to inquire of the defendant concerning the nature, substance and content of his religious beliefs in order to show that such beliefs were inconsistent with the qualities of good character claimed. Nor was it competent for the court to conduct such an inquiry. [*Id.*]

Our Supreme Court reversed the conviction, finding that the improper inquiry was "prejudicially unfair." *Id.* at 265.

The Michigan Supreme Court in *People v Hall*, 391 Mich 175, 182-183; 215 NW2d 166 (1974), indicated that the issue of prejudice is not to be considered when there is improper religious questioning. The *Hall* Court, addressing an argument by the prosecutor that any error did not require reversal because of a lack of prejudice or manifest injustice, held:

> This Court feels that it is inappropriate for it to take it upon itself to determine whether or not such prejudicial reaction did in fact occur, when our statute clearly at-

tempts to foreclose such review by forbidding the asking of the prejudicial question itself. A defendant is entitled to a trial free of such improper questions. Once the question is asked, this is no longer possible. A new trial is mandated. [*Id.*][6]

However, our Supreme Court somewhat modified the *Hall* ruling in *People v Burton*, 401 Mich 415, 417-418; 258 NW2d 58 (1977), by indicating that if the trial court acts in a "swift and commendable" manner in cutting off the improper religious questioning, reversal is not necessary. Prejudice from improper religious inquiries may result in the absence of "swift action" by the trial court to prevent any prejudice. *Leshaj, supra* at 420-421.

Here the prosecutor attempted to inquire about defendant's Catholic beliefs in order to show that the beliefs were inconsistent with his behavior; however, the trial court ended the questioning, and thus the only information elicited by the prosecutor was that defendant was a member of a Catholic church in the 1990s and practiced his faith. This is no more than, and is indeed less than, that which was divulged to the jury on direct examination of defendant by his counsel. In the context of prosecutorial misconduct, it would appear that the prosecutor was proceeding in good faith, given that defendant had opened the door on the issue; however, the caselaw does not support the road down which the prosecutor was heading. Regardless, in light of the trial court's wisdom in swiftly and commendably stopping the religious line of questioning, we cannot conclude that defendant was denied a fair and impartial trial or that reversal is necessary. Moreover, the content

---

[6] The prosecutor in *Hall* asked the defendant if he believed in the Supreme Being, and the defendant answered "yes," which was followed by the question whether the defendant would tell a falsehood to save himself. *Hall, supra* at 180.

or substance of defendant's Catholic beliefs was never explored, and thus reversal is unwarranted.[7]

Defendant next argues prosecutorial misconduct when the prosecutor elicited testimony from Detective Leach concerning "delayed disclosure"[8] without his being qualified as an expert. A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence. *Noble, supra* at 660.

The gist of defendant's argument is that the prosecutor, allegedly realizing that testimony regarding delayed disclosure required an expert, presented the issue to the trial court as simply a police officer giving lay testimony based on his training and experience without the need for being first qualified as an expert, while suggesting to the jury that Leach was an expert on the subject. The record reveals that the prosecutor did indicate to the trial court that Leach could testify on delayed disclosure as a police officer who had training and experience in the subject and that such testimony was not "expert" testimony. However, the prosecutor also stated that, assuming an expert opinion was being given, Leach qualified as an expert on the subject of delayed disclosure. The trial court ruled:

> I am going to allow the officer to testify to answer that question. I would, however, caution and instruct the jury

[7] This Court in *People v Leonard*, 224 Mich App 569, 594; 569 NW2d 663 (1997), addressed a claim that defense counsel was ineffective in failing to object when the prosecutor improperly elicited testimony from a witness that the defendant was a Muslim. The *Leonard* panel, having first cited legal authority on the issue presented, including *Hall, supra*, found the prosecutor's questioning improper, but it did not reverse "because the testimony elicited did not reveal defendant's opinion or belief regarding the subject of religion." *Leonard, supra* at 594-595. See also *People v McLaughlin*, 258 Mich App 635, 663; 672 NW2d 860 (2003).

[8] "Delayed disclosure" refers to sex abuse victims, including children, not immediately informing others of the abuse that transpired.

that the testimony that you're hearing from the officer is based upon his lay experience as an officer in this matter and that officer is not testifying as an expert in these matters.

Later, the court again stated that it was allowing Leach to give lay opinion testimony based on his training and experience.

Expert testimony is admitted pursuant to MRE 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Because Leach was testifying about delayed disclosure on the basis of his knowledge, experience, and training, it would appear that his testimony constituted expert opinion testimony and not lay opinion testimony under MRE 701, which is limited to opinions or inferences that are "rationally based on the perception of the witness" and that are "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." The caselaw on this issue is not entirely clear. For example, in *Chastain v Gen Motors Corp (On Remand)*, 254 Mich App 576; 657 NW2d 804 (2002), the trial court permitted a police officer to give lay opinion testimony under MRE 701 that the plaintiff was not wearing his seatbelt. This Court affirmed, rejecting the plaintiff's claims that the trial court should not have admitted the evidence under MRE 701, that expert testimony under MRE 702 was necessary, and that the

officer was not qualified to give an expert opinion on the issue. The *Chastain* panel held that the lay opinion was not admitted in error because the testimony was based on the officer's perceptions at the scene of the accident and because the opinion was not based on his past experience in investigating car accidents. *Chastain, supra* at 586-590. The Court stated, "A careful examination of [the officer's] testimony establishes that although his opinion in this case was consistent with conclusions he had drawn in other cases he had investigated, his past experience did not form the basis of his opinion testimony." *Id.* at 590. Here, Leach's testimony on delayed disclosure was drawn from his past experiences and training.

In *Co-Jo, Inc v Strand*, 226 Mich App 108; 572 NW2d 251 (1997), the plaintiffs argued that an off-duty fireman's opinion testimony regarding the speed at which a building burned was improperly admitted as lay opinion testimony under MRE 701 because expert testimony was required and the fireman was not qualified as an expert. This Court held that the trial court did not abuse its discretion in admitting the opinion evidence regarding the speed and intensity of the fire. *Co-Jo, supra* at 117. The *Co-Jo* panel stated:

> [The fireman's] conclusions were based on observation of the fire for over thirty minutes. The opinion testimony was limited to describing the fire in relation to other building fires [the fireman] had witnessed. The reliability of his conclusions was premised on his extensive experience in observing other building fires and investigating their causes. The testimony was of a general nature, without any reference to technical comparison or scientific analysis. [*Id.*]

Under *Co-Jo*, it could be reasonably argued that Leach's testimony was acceptable lay opinion testimony. *Co-Jo* appears to be at odds with *Chastain*. We,

however, do not need to resolve the issue, and the apparent conflict in the caselaw gives credence to a conclusion that the prosecutor did not pursue the challenged questioning in bad faith. Assuming that expert testimony was required, Leach was more than qualified to give an expert opinion on delayed disclosure to the extent of the testimony actually presented.[9] He testified at length about his extensive knowledge, experience, training, and education concerning the sexual abuse of children. Leach has personally participated in the investigation of hundreds of criminal sexual conduct cases involving child victims. And he had received training in the investigation of cases involving delayed disclosure. With his background and experience in investigating child sex abuse cases and interviewing victims, Leach became knowledgeable regarding delayed disclosure, and, according to Leach, delayed disclosure is common and happens quite frequently with child victims.[10] On this record, the disputed testimony was admissible, and the prosecutor acted in good faith in eliciting the testimony. Accordingly, reversal is unwarranted.

Defendant next argues that the prosecutor improperly introduced innuendo to the jury suggesting that defendant was a violent and abusive person. A prosecutor may not inject unfounded and prejudicial innuendo into a trial. *People v Burrell*, 127 Mich App 721, 726; 339 NW2d 239 (1983). The prosecutor asked the victim why visitation exchanges between defendant and her bio-

---

[9] Leach did not testify regarding the intricate psychological underpinnings of delayed disclosure, which would have required different expertise, but instead focused on its prevalence and commonsense reasons that would explain the behavior, such as threats or fear of getting into trouble.

[10] Defendant concedes that testimony regarding delayed disclosure is a proper subject to present to a jury if a qualified expert testifies on the matter.

logical father had to be made at a state police post, and she stated that it was because her biological father had started a fight with defendant. This did not reflect on the violent character of defendant, but rather on that of the victim's biological father. Accordingly, and contrary to defendant's argument, this testimonial exchange did not constitute the introduction of unfounded and prejudicial innuendo.

The prosecutor also elicited testimony from the victim that defendant had beaten her two brothers with a belt. The trial court allowed the questioning over objection because defense counsel had inquired on cross-examination of the victim about why she no longer liked defendant after initially liking him when they first met. While there may be issues regarding whether this was improper other-acts evidence, we cannot conclude that the prosecutor proceeded in bad faith, given that the trial court permitted the questioning and testimony. Defendant next points to the questioning of Detective Leach, during which the prosecutor elicited testimony regarding complaints made to the Family Independence Agency (FIA) about the Dobek family. However, the testimony clearly reflects that the FIA information on file only pertained to one of Dobek's adult sons and that there were no complaints regarding defendant. Reversal is unwarranted.

Finally, defendant argues that the prosecutor improperly appealed to the jury's sympathy for the victim when, in response to an objection by defense counsel that a question was irrelevant and designed to evoke an emotional response, the prosecutor responded, "I'm not trying to [e]voke. It's breakin' my heart to see this." It is improper for a prosecutor to seek the jury's sympathy for the victim. *People v Mallory*, 421 Mich 229, 250; 365 NW2d 673 (1984). When viewed in context, the brief

and innocuous statement challenged by defendant does not appear to have been made in a concerted effort to seek sympathy for the victim. Moreover, the comment hardly calls for reversal, and the trial court instructed the jury to base its verdict solely on the evidence.

In sum, the claims of prosecutorial misconduct do not support reversal of defendant's convictions. He was not denied a fair and impartial trial.

### B. INSTRUCTIONAL ERROR REGARDING DATE AND TIME OF OFFENSES

Defendant next argues that the trial court committed error necessitating reversal when it instructed the jury that the prosecution need not prove the date and time of the offenses, even though the felony information had identified the dates of the offenses as a specific four-day period in September 1995 with respect to the first incident and a period from September to November 1995 relative to the second incident.[11] Defendant's focus is on the first incident, contending that the instruction negated his alibi defense pertaining to the specific period in the information.[12] In notes that the jury sent to the trial court during deliberations, the jury expressed some confusion regarding whether the prosecution was required to prove that the charges arising out of the first incident happened on the dates in the felony

---

[11] Defendant argued at trial that CJI2d 3.10 should have been given. CJI2d 3.10 provides, "The prosecutor must also prove beyond a reasonable doubt that the crime occurred on or about [state date alleged] within _____ County."

[12] The first incident was alleged to have occurred during a four-day period in which the victim's mother was in the hospital for a hysterectomy. Defendant presented testimony that he spent most of those four days in the hospital with his wife, the victim's mother, while at the same time the victim was staying with her biological father as part of his parenting time.

information, which dates were also included on the jury verdict form. The trial court reiterated that time was not an element of the crime of criminal sexual conduct and that the prosecution need not prove the date or time of the offenses beyond a reasonable doubt. The court explained to the jury that the dates were placed on the jury verdict form simply to differentiate between the two sets of incidents.

We initially note that the jury was instructed that the prosecutor had the burden to prove beyond a reasonable doubt that the victim was less than 13 years old at the time of the offenses.

Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Fennell*, 260 Mich App 261, 264; 677 NW2d 66 (2004); *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003). A defendant in a criminal trial is entitled to have a properly instructed jury consider the evidence against him or her. *People v Hawthorne*, 265 Mich App 47, 57; 692 NW2d 879 (2005), rev'd on other grounds 474 Mich 174 (2006). The trial court's role is to clearly present the case to the jury and to instruct it on the applicable law. *Fennell, supra* at 265. Jury instructions must include all the elements of the offenses charged against the defendant and any material issues, defenses, and theories that are supported by the evidence. *Id.* Jury instructions are reviewed in their entirety, and there is no error requiring reversal if the instructions sufficiently protected the rights of the defendant and fairly presented the triable issues to the jury. *People v Holt*, 207 Mich App 113, 116; 523 NW2d 856 (1994).

An information is required to contain the "time of the offense as near as may be"; however, "[n]o variance

as to time shall be fatal unless time is of the essence of the offense." MCL 767.45(1)(b). Time is not of the essence, nor is it a material element, in criminal sexual conduct cases involving a child victim. *People v Taylor*, 185 Mich App 1, 8; 460 NW2d 582 (1990); *People v Stricklin*, 162 Mich App 623, 634; 413 NW2d 457 (1987); *People v McConnell*, 122 Mich App 208, 212; 332 NW2d 408 (1982), rev'd on other grounds 420 Mich 852 (1984); *People v Bowyer*, 108 Mich App 517, 523; 310 NW2d 445 (1981).[13] Moreover, an alibi defense does not make time of the essence. *McConnell, supra* at 212-213, citing *People v Smith*, 58 Mich App 76; 227 NW2d 233 (1975). Although numerous sexual acts were established at trial, the trial court's instructions properly confined the jury to the acts charged, for purposes of rendering a verdict thereon, by allowing consideration of only the incident in defendant's bedroom and the incident in the kitchen, while also properly instructing the jury that the prosecutor did not have to prove the dates on which the two incidents occurred as long as they occurred before the victim's thirteenth birthday. See *People v Howell*, 396 Mich 16, 28; 238 NW2d 148 (1976) (court must confine jury to the acts charged if additional sexual acts are proven).[14]

---

[13] Additional support for our ruling is found in *People v Naugle*, 152 Mich App 227, 235; 393 NW2d 592 (1986) (rejecting argument that the prosecution failed to establish dates of offenses beyond a reasonable doubt because time is not an element in sexual assault offenses), and *People v Miller*, 165 Mich App 32, 47; 418 NW2d 668 (1987), aff'd on remand 186 Mich App 660 (1991) (because time is not an element in sexual assault offenses, the defendant was not prejudiced in preparing a defense).

[14] Defendant's reliance on *People v Brocato*, 17 Mich App 277; 169 NW2d 483 (1969), is misplaced because in *Brocato* all the evidence at trial pointed to a particular date on which the crime was committed. But, here, the victim was recalling events that transpired years earlier, and the evidence regarding the first incident indicated that it happened around the time of the victim's mother's hysterectomy.

In light of the caselaw and MCL 767.45(1)(b), we hold
that, because this was a criminal sexual conduct case
involving a child victim, there was no error relative to
the trial court's multiple instructions to the jury re-
garding the dates of the offenses. We do observe that, in
the context of this case, time was somewhat of the
essence because the charges were based on the victim's
being under the age of 13. There can be no dispute that
the prosecutor had to prove beyond a reasonable doubt
that the offenses occurred before the victim turned 13
years old. However, the jury was specifically instructed
that the prosecution had that burden, and when the
trial court addressed the jury's notes, it reminded the
jury that it had to find that the elements of the crimes,
as previously instructed, were proven beyond a reason-
able doubt. The jury did not communicate any confu-
sion regarding the date of offense instruction as it
related to the instruction that the prosecutor was
required to prove beyond a reasonable doubt that the
victim was under 13 when the offenses occurred. Rever-
sal is unwarranted.

### C. MRE 404(b)—"OTHER ACTS" EVIDENCE

Defendant next argues that the trial court errone-
ously admitted evidence of other acts he had committed.
The other-acts evidence at issue concerns the testimony
of defendant's sister-in-law that defendant fondled her
genital area with his foot and later stroked her breasts,
the testimony of a former family babysitter that defen-
dant had made an unsuccessful attempt to touch her
inappropriately, and the testimony of the victim regard-
ing acts of sexual molestation other than those for
which defendant was charged.

In general, this Court reviews a trial court's decision
regarding the admissibility of other-acts evidence for

an abuse of discretion. *People v Crawford,* 458 Mich 376, 383; 582 NW2d 785 (1998). "However, decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence." *Lukity, supra* at 488. Questions of law are reviewed de novo. *Id.*

Pursuant to MRE 404(b)(1), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Other-acts evidence, however, may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material . . . . " MRE 404(b)(1). It is insufficient for the proponent of the evidence to merely recite one of the purposes articulated in MRE 404(b). *Crawford, supra* at 387. The proponent must also explain how the evidence relates to the recited purposes. *Id.*

Evidence of other acts may be admitted under MRE 404(b)(1) if (1) the evidence is offered for a proper purpose, i.e., "something other than a character to conduct theory," (2) the evidence is relevant under MRE 402, as enforced by MCR 104(b), "to an issue or fact of consequence at trial," and (3) the probative value of the evidence is not substantially outweighed by its potential for undue or unfair prejudice under MRE 403.[15] *People v VanderVliet,* 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994), citing and

---

[15] MRE 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

quoting *Huddleston v United States,* 485 US 681, 687, 691-692; 108 S Ct 1496; 99 L Ed 2d 771 (1988). With respect to the first two *VanderVliet* requirements, our Supreme Court in *People v Knox,* 469 Mich 502, 509-510; 674 NW2d 366 (2004), reviewing the law regarding MRE 404(b), stated:

> In *People v Crawford,* 458 Mich 376, 385; 582 NW2d 785 (1998), this Court explained that the prosecution bears the initial burden of establishing the relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of MRE 404(b). "Relevance is a relationship between the evidence and a material fact at issue that must be demonstrated by reasonable inferences that make a material fact at issue more probable or less probable than it would be without the evidence." *Crawford, supra* at 387. Where the only relevance of the proposed evidence is to show the defendant's character or the defendant's propensity to commit the crime, the evidence must be excluded.

In the case at bar, the prosecutor filed and served a notice under MRE 404(b)(2) before trial with respect to the testimony of the babysitter and the sister-in-law, but nothing was served in regard to other sexual acts committed against the victim. In relation to the victim's testimony, defendant maintains that he did not receive proper notice under MRE 404(b)(2), which provides:

> The prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence.

As noted above, the record does not reveal a pretrial notice regarding other-acts evidence and the victim. Before opening arguments were presented, the issue of other-acts evidence was raised, and the prosecutor discussed the evidence regarding the babysitter, the

sister-in-law, and the other sexual acts against the victim, noting that a notice had been sent. The prosecutor was mistaken in claiming that the notice covered the victim. But defense counsel made no procedural objection to the prosecutor's request to admit the victim's testimony regarding other acts. Defense counsel acknowledged that there was reference to hundreds of incidents involving the victim and defendant at the preliminary examination. Counsel did not make any argument concerning defective notice under MRE 404(b)(2), but simply argued the substantive issue of admissibility. Accordingly, the issue becomes whether defendant has shown plain error affecting his substantial rights, which requires a showing of prejudice. *Carines, supra* at 763. Moreover, reversal is warranted only when the plain error results in a conviction of an actually innocent defendant or when the error seriously affects the fairness, integrity, or public reputation of judicial proceedings independently of a defendant's innocence. *Id.*

Given that defense counsel was aware of claims of hundreds of other incidents, we cannot conclude that defendant was prejudiced, and the record does not establish that defendant was actually innocent or that the integrity of the proceedings would be blemished by allowing the evidence. We observe the following passage from *People v Hawkins*, 245 Mich App 439, 455-456; 628 NW2d 105 (2001), in which this Court declined to reverse a conviction for failure to comply with MRE 404(b)(2) when the other-acts evidence was substantively admissible:

> Because Hawkins has never suggested how he would have reacted differently to this evidence had the prosecutor given notice, we have no way to conclude that this lack of notice had any effect whatsoever. For instance, Hawkins has not suggested or created a record that would suggest

that, had he known the prosecutor intended to introduce this evidence, he would have called another witness to testify, that his attorney would have objected to the evidence, or that he would have provided other evidence to counter the prior bad acts testimony.

Here, for reasons discussed later in this opinion, the evidence was substantively admissible, and, as in *Hawkins*, there is no indication that defendant would have proceeded differently with proper notice. Indeed, the victim's revelation of hundreds of sexual incidents was seized upon by defendant in support of the defense theory that the victim was lying because a large number of incidents could not have occurred without someone in the small, crowded Dobek home noticing the assaults. Reversal is not warranted on the basis of lack of notice under MRE 404(b)(2).

Substantively speaking, the trial court did not err in allowing the victim to testify regarding other sexual acts between her and defendant. In *People v DerMartzex*, 390 Mich 410; 213 NW2d 97 (1973), a unanimous Supreme Court allowed testimony by a ten-year-old girl regarding numerous uncharged sexual acts committed against her by the defendant, who was charged with sexually assaulting the youngster. The Court, after generally acknowledging proper purposes for admitting other-acts evidence under MCL 768.27, such as to show intent or scheme, plan, or system,[16] ruled:

---

[16] The Michigan Rules of Evidence were adopted on January 5, 1978, and made effective March 1, 1978. 402 Mich lxxxviii. This was after *DerMartzex* was issued. MCL 768.27 contains language comparable to MRE 404(b). We note that, effective January 1, 2006, too late for this case, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). A "listed offense" is defined as one enumerated in section 2 of

Similarly, it has been held that the probative value outweighs the disadvantage where the crime charged is a sexual offense and the other acts tend to show similar familiarity between the defendant and the person with whom he allegedly committed the charged offense. The rationale of this exception to the general rule is well expressed by Mr. Justice CHRISTIANCY in an appeal from a conviction of the offense of incest:

"[W]here a witness has testified to a fact or transaction which, standing alone and entirely unconnected with anything which led to or brought it about, would appear in any degree unnatural or improbable in itself, without reference to the facts preceding and inducing the principal transaction, and which, if proved, would render it more natural and probable; *such* previous facts are not only admissible and relevant, but they constitute a necessary part of such principal transaction—a link in the chain of testimony, without which it would be impossible for the jury properly to appreciate the testimony in reference to such principal transaction."

The principal issue confronting a jury in most statutory rape cases . . . is the credibility of the alleged victim. Limiting her testimony to the specific act charged and not allowing her to mention acts leading up to the assault would seriously undermine her credibility in the eyes of the jury. Common experience indicates that sexual intercourse and attempts thereat are most frequently the culmination of prior acts of sexual intimacy. [*DerMartzex, supra* at 413-415 (citations omitted; emphasis and alteration in original).]

Consistently with *DerMartzex,* and considering that the charged acts here all occurred within a three-month window despite the fact that the victim and defendant had resided together for many years, the other-acts evidence would explain and give some context to the

the Sex Offenders Registration Act, MCL 28.721 *et seq.* MCL 768.27a(2)(a). The listed offenses include the various forms of criminal sexual conduct. MCL 28.722(e)(*x*).

charged offenses and the relationship between the victim and defendant, would show familiarity, and would lend support to the victim's credibility. The other-acts evidence constituted " 'a link in the chain of testimony.' " *Id.* at 414 (citation omitted). *DerMartzex* supports the admission of the evidence, and we hold that the trial court did not err in allowing other-acts evidence concerning sexual acts between defendant and the victim.

In further support, with regard to proving a common plan, scheme, or system, our Supreme Court in *Knox, supra* at 510, citing and summarizing *People v Sabin (After Remand),* 463 Mich 43, 63-64; 614 NW2d 888 (2000), stated:

> We clarified that "evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." We cautioned both that "[l]ogical relevance is not limited to circumstances in which the charged and uncharged acts are part of a single continuing conception of plot," and that "[g]eneral similarity between the charged and uncharged acts does not, however, by itself, establish a plan, scheme, or system used to commit the acts." [Citations omitted; alterations in original.]

We hold that the other-acts evidence relative to the victim was not submitted for purposes of showing defendant's propensity to commit the crimes or his character; rather, it was properly admitted for the purpose of establishing or showing a scheme, plan, or system, as well as intent. The evidence essentially revealed defendant's secretive and repetitive patterns of behavior in sexually abusing the victim. The uncharged sexual misconduct and the charged offenses were sufficiently similar to support an inference that

they were manifestations of a common plan, scheme, or system. The other-acts evidence was significantly probative on issues of intent, scheme, plan, and system, as well as on credibility and presenting the full picture to the jury, as indicated in *DerMartzex*, and the probative value was not substantially outweighed by the danger of unfair prejudice to defendant. MRE 403. Again, defendant attempted to use the allegations of numerous sexual assaults to his advantage, considering the small home and many residents. Reversal is unwarranted.

The other-acts evidence regarding the babysitter and the sister-in-law was also properly admitted. Even though they were not children, the acts committed by defendant against the two women showed how he would engage in sexual touching or make sexual advances while others, including his wife, were in the same room or in the house. The victim's claims that defendant would sexually assault her while others were in the same room or in the house were assailed by defendant, and the testimony by the babysitter and sister-in-law showed a plan, scheme, or system whereby defendant would discreetly isolate and improperly touch a female even with others present nearby. The testimony was also relevant for the proper purpose of showing "opportunity," whereby defendant would take advantage of any small window of opportunity to sexually touch a female, as he had done with the victim. MRE 404(b)(1). Again, the evidence was very probative on such matters, and the probative value was not substantially outweighed by the danger of unfair prejudice to defendant. MRE 403. The trial court did not commit error.[17]

---

[17] We note that the trial court also gave a limiting and cautionary instruction regarding the other-acts evidence; the jury was directed not to use the evidence for purposes of showing propensity.

D. EXCLUSION OF EXPERT TESTIMONY ON
CHARACTERISTICS OF A SEX OFFENDER

Defendant next argues that the trial court abused its discretion in granting the prosecutor's motion to preclude defendant from introducing expert testimony that defendant did not exhibit characteristics or fit the profile of a typical sex offender as determined by psychological testing and interviews. We disagree.

The trial court conducted an evidentiary hearing involving the testimony of Dr. Andrew Barclay. Dr. Barclay is a retired professor of psychology and is a licensed psychologist. He testified at length regarding his impressive and accomplished background in the field of psychology. A significant portion of Barclay's education, teaching, studies, workshops, writings, research, and work in general focuses and focused on human sexuality as well as sex and violence or aggression. He counsels and treats sex offenders as part of his practice.

Barclay testified that he did an assessment of defendant in February 2004 that included a clinical interview, a sexual history interview, and psychological testing. The psychological tests that were given to defendant were the third edition of the Millon Clinical Multiaxial Inventory (MCMI), the second edition of the Minnesota Multiphasic Personality Inventory (MMPI), and the Rorschach test, better known as the inkblot test. Barclay's testimony revealed a great deal of practical experience in administering and interpreting the psychological tests and in conducting the accompanying interviews. His testimony also supported a finding that he was extremely familiar with and knowledgeable of the literature and research in this area of psychology, i.e., sex-offender testing and profiling, and that he performed the tests and interpreted the results consis-

tently with accepted practices in the field of psychology. As a result of the interviews and psychological testing, Barclay opined that defendant did not fit the profile of a sex offender.

The trial court excluded Barclay's testimony because it found a lack of scientific reliability in the process of identifying sex offenders through psychological testing and because the testimony would not assist the jury in its function of deliberating on the issue of guilt or innocence.

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Craig v Oakwood Hosp,* 471 Mich 67, 76; 684 NW2d 296 (2004). Similarly, a trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. *Ackerman, supra* at 442-443. However, if our inquiry requires interpretation of the Michigan Rules of Evidence, an issue of law is presented, which this Court reviews de novo. *Id.* at 442. A trial court necessarily abuses its discretion when the court permits the introduction of evidence that is inadmissible as a matter of law. *Craig, supra* at 76. An error in the admission or exclusion of evidence will not warrant reversal unless refusal to do so appears inconsistent with substantial justice or affects a substantial right of the opposing party. *Id.*

The analysis regarding whether to admit or exclude expert testimony begins with MRE 702. We again quote MRE 702:

> If the court determines that scientific, technical, or other specialized knowledge[18] will assist the trier of fact to

---

[18] We note that, effective January 1, 2004, MRE 702 was amended, deleting the adjective "recognized" before the words "scientific, technical, or other specialized knowledge." See Staff Comment to 2004 Amendment of MRE 702.

understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The trial court has an obligation under MRE 702 "to ensure that any expert testimony admitted at trial is reliable." *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004). While the exercise of the gatekeeper function is within a court's discretion, the court may neither abandon this obligation nor perform the function inadequately. *Id.* Expert testimony may be excluded when it is based on assumptions that do not comport with the established facts or when it is derived from unreliable and untrustworthy scientific data. *Tobin v Providence Hosp*, 244 Mich App 626, 650-651; 624 NW2d 548 (2001); *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 286; 602 NW2d 854 (1999). The *Gilbert* Court stated that "junk science" must be excluded, and it further indicated:

MRE 702 mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data. Thus, it is insufficient for the proponent of expert opinion merely to show that the opinion rests on data viewed as legitimate in the context of a particular area of expertise (such as medicine). The proponent must also show that any opinion based on those data expresses conclusions reached through reliable principles and methodology. [*Gilbert, supra* at 782.]

We conclude that Dr. Barclay's proffered testimony regarding defendant's sex-offender profile as developed from psychological testing was neither sufficiently sci-

entifically reliable nor supported by sufficient scientific data to allow Barclay to testify. Further, the proffered evidence would not assist the trier of fact to understand the evidence or determine a fact in issue; rather, any arguable probative value attached to the evidence would be substantially outweighed by the danger of unfair prejudice to the prosecution, confusion of the issues, or misleading the jury. Accordingly, we affirm the trial court's ruling excluding the evidence.

We have thoroughly examined the testimony presented at the hearing and reach the following conclusions. Barclay was clearly qualified as an expert witness in psychology relative to matters of sex and violence and to issues regarding sex offenders. Further, Barclay's testimony was derived from specialized knowledge. Additionally, defendant laid a foundation of scientific data and information presented through Barclay's testimony and exhibits supporting the general validity and acceptance of the psychological tests employed by Barclay, the manner of administration, and their interpretation. However, use of the psychological tests to actually identify sex offenders was not sufficiently supported by the data, nor can the science be deemed sufficiently reliable to admit Barclay's testimony in a court of law and present it to the jury.

There are many aspects of Barclay's testimony that are problematic. Barclay stated that the sex-offender profiles developed from the testing are useful and can indicate a predisposition, but they cannot establish with any degree of certainty that a person is or is not a sex offender. Barclay acknowledged that none of the literature presented endorsed using the test results in a court of law to assist in determining whether someone is a sex offender on the basis of that person's psychological

profile. Barclay also conceded that there are numerous articles that indicate that the tests should not be used to create a sex-offender profile. Indeed, there is controversy in the psychological community about using psychological testing to identify sex offenders. Barclay's testimony further reflected that the research is ongoing in this area, as opposed to being firmly established.

Barclay additionally acknowledged that there is some degree of subjectivity in the entire process and that, in part, the diagnosis is an art form. He also conceded that the general consensus in the scientific community is that psychologists are not lie detectors and cannot make a definitive determination that an individual is a sex offender. Barclay further testified that different life events occurring at the time of testing can affect the profile and skew the results and that the profile can change over time; here, defendant was tested nearly nine years after the alleged sexual abuse. Furthermore, according to Dr. Barclay, while somewhat difficult, an intelligent or cagey person can manipulate and fool the tests, which creates concerns about the reliability of testing conducted on known sex offenders *and* with respect to the subject being profiled. Specifically, Barclay noted that it is possible that defendant fooled the tests and Barclay. While we do not demand 100 percent scientific certainty, for all the reasons we have listed, we hold that sex-offender profiling is not sufficiently reliable, nor is the supporting data sufficient, to allow for admission.

Further, the testimony would not assist the trier of fact in understanding the evidence or in determining a fact in issue. With respect to assisting the jury, Barclay's testimony would more likely confuse the jury and

distract it from focusing on the pertinent evidence regarding the events that transpired in the Dobek family household ten years ago. Assuming that the evidence was admissible under MRE 702, any minimal probative value would be "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." MRE 403.

By analogy, we view the evidence offered by defendant—that defendant does not fit the profile of a sex offender after interviews and psychological testing—to be comparable to a defendant attempting to admit the results of a favorable polygraph test, which test is also administered and interpreted by an expert, and which test is not admissible at trial. See *Jones, supra* at 355 (polygraph result not admissible at trial). Regarding polygraph tests, our Supreme Court has stated:

> The judicial concern with scientific consensus regarding the procedure is because the quantity the polygraph attempts to measure—the truthfulness of a witness—is directly related to the essence of the trial process. Thus, exclusion at trial of polygraph results rests upon the judicial estimate that the trier of fact will give disproportionate weight to the results and consider the evidence as conclusive proof of guilt or innocence. [*People v Ray*, 431 Mich 260, 265; 430 NW2d 626 (1988) (citations and internal quotes, alterations, and omissions deleted).]

The same danger exists should sex-offender profiling evidence be introduced in a criminal trial in which the jury is charged with determining the truthfulness of witnesses and whether a defendant committed sexual offenses, i.e., whether he or she is a sex offender. Admission of an offender profile and testing that purport to answer those questions could be given disproportionate weight by the jury and considered conclusive proof of guilt or innocence.

We next examine caselaw that has addressed the use of expert testimony in the context of prosecutions involving criminal sexual conduct. In *People v Christel*, 449 Mich 578, 580; 537 NW2d 194 (1995), the Michigan Supreme Court, considering the issue of expert testimony regarding battered woman syndrome as it applied to the complainant, stated:

> Generally, battered woman syndrome testimony is relevant and helpful when needed to explain a complainant's actions, such as prolonged endurance of physical abuse accompanied by attempts at hiding or minimizing the abuse, delays in reporting the abuse, or recanting allegations of abuse. If relevant and helpful, testimony regarding specific behavior is permissible. However, the expert may not opine whether the complainant is a battered woman, may not testify that defendant was a batterer or guilty of the instant charge, and may not comment on the complainant's truthfulness. Moreover, the trial court, when appropriate, may preclude expert testimony when the probative value of such testimony is substantially outweighed by the danger of unfair prejudice.

The Court stated that expert testimony is generally needed "when a witness' actions or responses are incomprehensible to average people." *Id.* at 592.

Considering *Christel* by analogy, Barclay was not going to testify that defendant was not a sex offender, nor was he going to specifically testify with respect to defendant's truthfulness. Rather, Barclay would have testified regarding the interviews and psychological testing of defendant and concluded that defendant did not fit the profile of a sex offender on the basis of Barclay's interpretation of the test results and interviews. We believe, however, that Barclay's testimony would come dangerously close to an implicit opinion that defendant is not a sex offender and that defendant is not lying when he denies the molestation charges.

The difference between expert testimony on battered woman syndrome and that which was proffered here is that the "battered woman syndrome" expert would share expertise regarding how women with the syndrome who have been subjected to abuse act and behave, thereby giving some assistance to the jury with respect to explaining the actions of the female complainant in the case before it. Barclay's testimony, on the other hand, would not explain or give credence to defendant's past behavior, actions, and the events in his life. Instead, Barclay's testimony would relate to psychological tests taken by defendant as part of the preparation for his defense in the criminal action, and would paint a profile of defendant as someone who would not be a sex offender.

In *Peterson, supra* at 352, our Supreme Court ruled:

> In these consolidated cases, we are asked to revisit our decision in *People v Beckley*, 434 Mich 691; 456 NW2d 391 (1990), and determine the proper scope of expert testimony in childhood sexual abuse cases. The question that arises in such cases is how a trial court must limit the testimony of experts while crafting a fair and equitable solution to the credibility contests that inevitably arise. As a threshold matter, we reaffirm our holding in *Beckley* that (1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty. However, we clarify our decision in *Beckley* and now hold that (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility.

Again, viewing *Peterson* by analogy, Barclay's testimony comes dangerously close to constituting testimony that defendant is not a sex offender, testimony vouching for defendant's veracity, and testimony that defendant is not guilty. Moreover, in the context of expert testimony that is acceptable under *Peterson*, Barclay would not be explaining defendant's behavior, nor would he be testifying regarding consistencies or inconsistencies in *behavior* between known sex offenders and defendant; rather, the focus would be on test results. Barclay would have extrapolated data or information from psychological testing conducted on known sex offenders, and his extrapolation would then be compared to psychological test results of individuals like defendant. Therefore, there is reliance on testing on both ends of the equation, which testing, as Barclay conceded, can be manipulated and is somewhat subjective. This is different from reliance on actual life events and activities, i.e., patterns of actual behavior.

Defendant relies on *Ackerman*, in which this Court rejected the defendant's argument that the trial court abused its discretion by admitting expert testimony from a social worker and psychotherapist regarding patterns and common practices of adult sex offenders in desensitizing child victims. This Court found that the psychotherapist was qualified in a recognized discipline and that the testimony would be helpful to the jury. *Ackerman, supra* at 445. The Court held:

> We believe that most of our citizen-jurors lack direct knowledge of or experience with the typical forms of conduct engaged in by adults who sexually abuse children. Accordingly, the trial court reasonably concluded that testimony about the typical patterns of behavior exhibited by child sexual abuse offenders would aid the jury. MRE 702. [*Id.*]

Like the other cases discussed earlier, the expert was testifying about the behavior and patterns of others in similar circumstances, as substantiated by scientifically collected data, in order to help explain to the jury the actions in the case before the court. That is not what Barclay intended to do here. He would not be explaining defendant's actions and the actions and patterns of known sex offenders, but instead offering a profile that relied on the psychological testing of known sex offenders and defendant. We are not addressing a comparison of behaviors but a comparison of test results.

Defendant also argues for admissibility under MRE 404(a) and 405(a). Of course, regardless of these rules of evidence, MRE 702 had to be satisfied and it was not, but nevertheless we will briefly touch on MRE 404(a) and 405(a).

MRE 404(a) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except: (1) Evidence of a pertinent trait of character offered by an accused . . . ." MRE 405(a) provides:

> In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into reports of relevant specific instances of conduct.

Defendant argues that Barclay's testimony constitutes proper evidence of an opinion on character under MRE 404(a) and 405(a). Black's Law Dictionary (7th ed), p 576, defines "character evidence," in part, as evidence "regarding someone's personality traits." The testing performed by Barclay supposedly provides results that define or reflect an individual's personality, traits, and predispositions. Assuming Barclay's opinion

is character evidence, the unusual nature of this character evidence, as opposed to traditional character evidence, is that it is not derived from Barclay's association with defendant over time in which Barclay developed an opinion of defendant's character from knowing him and how he lived his life; instead, the opinion is derived from psychological testing and interviews. In light of our ruling, it is unnecessary to determine whether the proffered testimony satisfactorily fits within the language of and is admissible under MRE 404(a) and 405(a).

Finally, we note that courts outside Michigan have also rejected admission of sex-offender-profile testimony. In *State v Cavaliere*, 140 NH 108, 109; 663 A2d 96 (1995), the New Hampshire Supreme Court reversed the trial court's decision that had allowed "the defendant to introduce, by expert testimony, evidence that he does not fit into a 'sexual offender profile.'" The defendant's expert in *Cavaliere* relied on the second edition of the MMPI, the second edition of the MCMI, and a test known as the Multiphasic Sex Inventory. The court examined New Hampshire Rule of Evidence 702, which is essentially the same as MRE 702 in Michigan. *Cavaliere, supra* at 109-110. In support of rejecting the expert's testimony, the court cited literature that noted that sex offenders are a heterogeneous group, thereby making research findings equivocal; that no particular profile predicts a propensity for sexual offending; that a significant number of sex offenders exhibit no measurable psychopathology; and that attempts to identify individuals as likely sex offenders on the basis of MMPI profiles are reprehensible. *Id.* at 114. Articles such as these may well have been what Dr. Barclay was referring to when he stated that there is literature against using sex-offender profiling in criminal cases.

In *State v Parkinson*, 128 Idaho 29; 909 P2d 647 (1996), the Idaho Court of Appeals held that the trial court did not err in excluding expert testimony offered by the defendant regarding sex-offender profiles. The court noted that numerous jurisdictions have rejected this type of testimony:

> [T]he introduction of expert testimony regarding whether a defendant fits an alleged "sexual offender profile" has been almost universally rejected in other jurisdictions. See *United States v. Pierre*, 812 F.2d 417 (8th Cir. 1987); *State v. Person*, 20 Conn. App. 115, 564 A.2d 626 (1989) . . . ; *Gilstrap v. State*, 215 Ga. App. 180, 450 S.E.2d 436 (1994); *People v. Edwards*, 224 Ill. App. 2d 1017, 167 Ill. Dec. 54, 586 N.E.2d 1326 (1992); *State v. Armstrong*, 587 So.2d 168 (La. Ct. App. 1991); *Commonwealth v. Trowbridge*, 36 Mass. App. Ct. 734, 636 N.E.2d 291 (1994) . . . ; *State v. Fitzgerald*, 382 N.W.2d 892 (Minn. Ct. App. 1986); *State v. Elbert*, 831 S.W.2d 646 (Mo. Ct. App. 1992); *People v. Berrios*, 150 Misc. 2d 229, 568 N.Y.S.2d 512 (N.Y. Sup. Ct. 1991); *State v. Gallup*, 98 Or. App. 211, 779 P.2d 169 (1989); *State v. Campbell*, 904 S.W.2d 608 (Tenn. Crim. App. 1995); *Williams v. State*, 649 S.W.2d 693 (Tex. Ct. App. 1983); *State v. Hulbert*, 481 N.W.2d 329 (Iowa 1992); *Pendleton v Commonwealth*, 685 S.W.2d 549 (Ky. 1985); *State v Cavaliere[, supra]*. Various reasons have been given for rejection of this type of evidence, including that it has not gained general acceptance in the scientific community, that it invades the province of the jury and unfairly prejudices the prosecution, and that it does not assist the trier of fact to understand the evidence or to determine a fact in issue. [*Id.* at 33.]

We agree with the rulings cited above. Moreover, we cannot help but mention our belief that were we to rule otherwise and allow the evidence, prosecutors would seek, on the strength of our opinion, to admit unfavorable profile results obtained from defendants, showing that the defendants fit the profile of a sex offender, and

there most certainly would be an outcry, and rightfully so, from the defense bar if this were permitted.

In sum, the trial court did not err in excluding Barclay's testimony.

### E. SENTENCING—PENALTY FOR ASSERTION OF INNOCENCE

Defendant next argues that the trial court erred when it allegedly took into consideration the fact that defendant continued to maintain his innocence at the time the court imposed its sentences. Defendant contends that the sentences were extended upward because of his protestations of innocence. We disagree.

A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt. *People v Yennior,* 399 Mich 892; 282 NW2d 920 (1977). However, evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation. *People v Houston,* 448 Mich 312, 323; 532 NW2d 508 (1995); *People v Wesley,* 428 Mich 708, 711; 411 NW2d 159 (1987). To determine whether sentencing was improperly influenced by the defendant's failure to admit guilt, this Court focuses on three factors: "(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *Wesley, supra* at 713. "[I]f there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence." *Id.*

It is first noted that, because the offenses occurred in 1995, the judicial sentencing guidelines were applicable, MCL 769.34(1), and defendant was sentenced within

the guidelines, albeit at the high end.[19] At the sentencing hearing and in defendant's memorandum regarding sentencing, there were no claims or protestations of innocence by defense counsel or defendant. Pleas for leniency were not based on assertions of innocence. Indeed, defendant's comments during his allocution could be implicitly construed as conceding guilt. Nonetheless, the trial court articulated the following passage at sentencing, on which defendant relies in support of his argument:

> Certainly there are many reasons when the Court looks at the underlying circumstances, which I am compelled now to believe based upon the findings of fact that were made by the trier of fact, to exceed the guidelines that have been set forth in the report. And those are—that's a 25-year-sentence, sir. The offense variables as the prosecutor have indicated are more than double the maximum range for the—for the scoring. Those are not—not contemplated. And as well the—the findings of fact that have been made by the jury there is a continuing protestation of innocence here. And I could find that that would be continuing injury to the victim that is not contemplated by the guidelines and is not reflected—reflected in the guidelines and does not allow closure to the victim in this case.
>
> Many times I find that the—there is closure. There's a sentence that the Court did yesterday and I believe that there was some closure to the family based upon the sincere—sincere apologies that were given by the Defendant in that case.
>
> I understand your defense, sir. I understand your protestations of innocence notwithstanding the findings of fact that were made by the—by the jury. But these are of no comfort to [the complainant] with reference to these and —her memories.

[19] The minimum sentence range was 10 to 25 years for the CSC I convictions, and defendant was sentenced to 25 to 40 years' imprisonment for the CSC I convictions.

> Based upon the Court's review of the presentence report, the review of the argument that's been placed upon the—the record, the sentencing memoranda that's been provided to the Court, it is the sentence of this Court . . . .

This passage indicates that *if* the trial court had considered defendant's asserted protestations of innocence, it might have supported an upward deviation from the guidelines. But ultimately, the trial court did not deviate from the guidelines and cited proper reasons for imposing the 25- to 40-year sentence. Considering the *Wesley* factors, we cannot conclude that defendant maintained his innocence after conviction, that the trial court attempted to make defendant admit guilt, or that the sentence would not have been as severe had defendant affirmatively admitted guilt. Resentencing is unwarranted.

### F. CUMULATIVE ERROR

Finally, defendant argues that the cumulative effect of the errors alleged, as outlined in this opinion, requires reversal.

We review this issue to determine if the combination of alleged errors denied defendant a fair trial. *People v Knapp*, 244 Mich App 361, 387-388; 624 NW2d 227 (2001). The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted. *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999).

Reversal on the basis of cumulative error is unwarranted because the cumulative effect of the fairly minor instances of prosecutorial misconduct, which were the only errors this panel found, did not deny defendant a fair trial.

### III. CONCLUSION

In summation, we hold that claims of prosecutorial misconduct were waived, not shown, or did not amount to a denial of defendant's right to a fair and impartial trial; that the trial court correctly instructed the jury that the prosecutor was not required to prove the dates of the offenses; that the other-acts evidence was admitted for proper purposes and in accord with MRE 401 through 404; that defendant's sentences were not affected by alleged claims of innocence; and that there was no cumulative error requiring reversal. We further hold that the proffered expert testimony regarding sex-offender profiling was properly excluded because it has not reached a level of scientific reliability sufficient to permit admission, there was insufficient supporting data, and the testimony would not have assisted the jury in understanding the evidence or in determining a fact in issue; rather, the proffered evidence would have confused the issues, misled the jury, and caused unfair prejudice to the prosecutor.

Affirmed.