# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

HARVEY SAVILL WINCE a/k/a HARVEY
SEVILLE WINCE,

Defendant-Appellant.

UNPUBLISHED
January 6, 2015

No. 317079
Washtenaw Circuit Court
LC No. 12-000418-FC

Before: K. F. KELLY, P.J., and SAWYER and METER, JJ.

PER CURIAM.

Following a jury trial, defendant was found guilty of first-degree child abuse, MCL 750.136b(2); and torture, MCL 750.85(1). The court sentenced defendant to prison terms of 120 months to 15 years for first-degree child abuse and 380 months to 65 years for torture. Defendant now appeals as of right. We affirm.

On March 31, 2012, having to work, the victim's mother left her young son JT[1] in the care of her daughter and defendant. When the victim's mother returned following work, her daughter had left, leaving JT alone with defendant. JT's mother said that her son was not injured at the time. She then went to see her father, leaving JT in defendant's care. When she returned around 9:00 p.m., she observed that JT's feet were red. She testified that when she removed his pants and shirt, she discovered bruises on the child and noted that the skin looked like it was "off his feet." Defendant testified that JT had earlier been involved in an altercation with some other children in the neighborhood. Defendant also testified that at some point JT became ill and vomited. Defendant testified that he drew a bath for JT, adjusting the hot and cold water to an acceptable temperature. He claimed that he then left JT in the bath and played a video game for several minutes. According to defendant, when he returned, JT was out of the bathtub. Defendant dried JT and noticed that the skin was coming off both his legs. He testified that it appeared that water had been added to the bathtub.

---

[1] The mother testified that JT was four years old at the time of trial.

-1-

The victim's mother took the child to the emergency room at St. Joseph Hospital. The attending physician testified that she saw "burns on his feet and buttocks" and that her "first thought was that this child had been submerged and held down in hot water." The child was stabilized and transported to the burn unit at the University of Michigan Hospital. Lisa Markman, an assistant clinical professor of pediatrics at the University of Michigan, was accepted as an expert in "child abuse," over defendant's objection. She reported that JT had been "beaten" and "intentionally burned in scalding water." She testified regarding the "stocking" pattern of the burns, their depth, and how burns on both feet are indicative of an intentional burn. She explained that the burn pattern was not consistent with defendant's explanation. She opined in regard to JT's condition that "this was one of the worst cases of physical abuse that I'd seen in a living child in a really long time." She testified that his head injuries alone would be "medically diagnostic of physical abuse." She also testified that a CT scan revealed a "Grade 3 liver laceration," which she characterized as "a potentially life-threatening injury."

Washtenaw County Sheriff's Office Detective Craig Raisanen tested the water at defendant's apartment less than 24 hours after the incident. He stated that he sought to learn if the bath water could get hot enough to cause scalding burns. He noted that the water heater was set to the "very hot" setting, which, according to the appliance's manual, allowed the water to be heated to 158 degrees Fahrenheit. He ran the water for five minutes, measuring the running water and the standing water in the tub at two minutes and again at five minutes. He used a standard water-temperature thermometer and recorded the water coming out of the faucet at 125 degrees and 90 degrees Fahrenheit at the two- and five-minute marks, respectively. He also measured the temperature of the water in the middle of the tub at 120 degrees and 115 degrees Fahrenheit at two and five minutes, respectively. On cross-examination, Raisanen explained that he did not consult with any experts or calibrate the thermometer before taking his measurements.

Defendant argues that the court erred in admitting evidence regarding Raisanen's testing of the water temperature because it went beyond lay opinion and was thus subject to, but did not meet, the requirements of *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993), and MRE 702. He also argues that Markman's opinions based on that test were improperly admitted. The first portion of this assertion of error was preserved, and is thus reviewed for an abuse of discretion. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id.* (citation and quotation marks omitted). The second portion is unpreserved, and thus will be reviewed for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763, 774; 597 NW2d 130 (1999).

Lay testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701; see also *People v Dobek*, 274 Mich App 58, 77; 732 NW2d 546 (2007). This contrasts with expert opinion testimony under MRE 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Raisanen collected water temperature data using a standard thermometer and presented his findings to the jury in his testimony. This testimony was not opinion testimony because it was merely a report of data collection. Raisanen was not asked if, in his opinion, the water was hot enough to burn a child. He only testified to his actions and observations, and this information was relevant to a fact in issue, namely, whether the victim could have received the type of burns he sustained in the bathtub at defendant's apartment. Indeed, the information was helpful in considering if JT could have added water to his bath and how it might have impacted the temperature of the water.

Additionally, there was nothing in Raisanen's testimony that qualifies as technical or scientific within the meaning of the evidentiary rule. Raisanen consistently testified that he used a standard thermometer and a simple procedure. Use of a thermometer and reading the temperature is well within the experience of lay individuals. Not only was Raisanen's testimony appropriate, but the jury had the capacity to properly weigh his testimony in light of defendant's cross-examination. Whether Raisanen's thermometer was properly calibrated does not negate his perception or move his testimony into that of an expert; such concerns go to the weight, not admissibility, of the evidence.

Defendant also claims the testimony should have been excluded under MRE 403 and 701 because the test was not accurate or reliable. However, there is no evidence on the record that Raisanen's temperature recordings were inaccurate. Defendant did not test the detective's thermometer to show that it was inaccurate, and, significantly, the evidence regarding the user manual showed that defendant's hot water heater was capable of producing water at temperatures recorded by Raisanen. There has been no showing that a special thermometer is needed to measure bath water or that thermometers need be calibrated to do so. Defendant's challenges may have raised questions of accuracy for the jury, but they did not establish that the test was invalid. The basic nature of Raisanen's testing and observations and how his testimony was rationally based on his perceptions was clear for the jury, and there is nothing about the testimony that would confuse the issues to be decided or subject defendant to the danger of unfair prejudice, especially given that he was subject to cross-examination. Any prejudice stemming from the testimony is due to its relevance to the facts in issue.

Because the testimony was proper, any reliance or reference to it by Markman was also appropriate and does not constitute plain error affecting defendant's substantial rights.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ David H. Sawyer
/s/ Patrick M. Meter

-3-