# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KEITH KERNELL SOLOMON, JR.,

        Defendant-Appellant.

UNPUBLISHED
February 18, 2016

No. 324034
Saginaw Circuit Court
LC No. 13-038705-FC

Before: HOEKSTRA, P.J., and METER and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant appeals as of right his convictions for assault with intent to murder, MCL 750.83, felon in possession of a firearm, MCL 750.224f, carrying a dangerous weapon with unlawful intent, MCL 750.226, carrying a concealed weapon, MCL.750.227, and three counts of possession of a firearm during the commission of a felony, second offense, MCL 750.227b. Because defendant's claims of prosecutorial misconduct and ineffective assistance of counsel are without merit, we affirm.

According to the evidence introduced at trial, defendant shot Gerald Hudson on May 9, 2013. Defendant and Hudson previously had a physical altercation over the fact that Hudson struck defendant's sister in the course of breaking up a physical fight between Hudson's sister and defendant's sister. On May 9, 2013, Hudson was sitting in a parked van outside of his sister's apartment complex with Tameka Greene, Greene's infant, and Aletha McFee. At the same time, defendant walked down the sidewalk with two friends. There were various accounts of what followed, but at some point, Hudson left the van to speak with one of the men accompanying defendant. Hudson then returned to the van, but soon exited a second time when defendant approached the van. Defendant and Hudson exchanged words. Hudson testified that defendant then tried to put a gun to Hudson's head, which Hudson pushed away. According to Hudson, defendant said "I'll kill your bitch ass." Defendant then shot Hudson in the stomach. Greene overheard an argument between Hudson and defendant, and she described Hudson as having his arms up in "defense mode" before he was shot by defendant. McFee and Hudson's sister, Sabrina Gipson, also saw defendant and Hudson have a conversation, following which defendant shot Hudson and then ran away.

At trial, defendant admitted to shooting Hudson, but defendant claimed that he did so in self-defense. According to defendant, he was walking away from Hudson when someone said

-1-

"watch out." Defendant turned to see Hudson "nugging," i.e., "pulling at his waistband like he got a gun," and defendant responded by pulling a gun and shooting to "scare" Hudson. No other witness described Hudson reaching for a gun, and the police did not recover a gun from Hudson or the van. Moreover, defendant's claim of self-defense conflicted with his pre-trial statements to police, during which he had denied any involvement with the shooting. Defendant testified at trial that he lied to police as well as his girlfriend and family members because he feared being sent back to prison for a parole violation. The jury convicted defendant as noted above. Defendant now appeals as of right.

On appeal, defendant argues that the prosecutor's closing and rebuttal arguments deprived him of his due process right to a fair trial. In particular, defendant asserts that the prosecutor impermissibly expressed personal beliefs by challenging defendant's veracity and by vouching for Greene's credibility. In the alternative, defendant contends that counsel provided ineffective assistance by failing to object to the prosecutor's comments.

Defendant failed to object to the prosecutor's remarks at trial, meaning his claims of prosecutorial misconduct are unpreserved. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). We review unpreserved claims of prosecutorial misconduct for plain error. *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Reversal is only warranted when the plain error caused an innocent defendant to be convicted, or when the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004) (quotation omitted). Further, under this standard, "we cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). They are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* Moreover, they need not state their arguments in the blandest of all possible terms. *Dobek*, 274 Mich App at 66. Regarding witness credibility, prosecutors may comment on witness credibility during closing arguments and, in particular, may "argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). See also *Thomas*, 260 Mich App at 455. However, a prosecutor may not express a personal opinion of a defendant's guilt and must not "vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *People v Bahoda*, 448 Mich 261, 276, 282-283; 531 NW2d 659 (1995).

In this case, defendant excerpts several remarks from the prosecutor's closing and rebuttal arguments that relate to the question of defendant's credibility and whether defendant lied to the jury. In this regard, during closing arguments, the prosecutor detailed the many lies

defendant told to his sister, the police, his girlfriend, and his mother about his role in the shooting. The prosecutor then stated:

> *And yet, the defendant gets up on the stand today and what's he do? He lies to you.* What part does he lie about? About [Hudson's] actions just before the shooting. This whole story of [Hudson] nugging is the word he used, which I assume means reaching towards his pants. *That's a lie; that just did not happen.* Nobody else saw it. There's no corroborating evidence to support the defendant's story that that actually occurred.

Contrary to defendant's claims, this argument was not improper. In context, it is clear that the prosecutor did not claim any special knowledge of defendant's truthfulness or express a personal opinion of defendant's guilt; rather the prosecutor permissibly argued from the evidence that defendant was not worthy of belief. As noted, the prosecutor prefaced these remarks with a recounting of the lies that defendant told his family, the police, and his girlfriend. Immediately following the assertion that defendant told "a lie," the prosecutor also stated: "Nobody else saw it. There's no corroborating evidence to support the defendant's story that that actually occurred." These arguments were firmly based on the evidence adduced. There were three eyewitnesses to the events surrounding the shooting besides Hudson and defendant. Not one of them mentioned that Hudson made a reaching motion toward his waistline. Further, by defendant's own admission, he repeatedly lied—to his mother, his sister, his girlfriend, and to the police—about his involvement with the shooting. Thus, viewed in context, the prosecutor was not expressing his opinion of defendant's guilt or implying that he had special knowledge of defendant's testimony. Rather, the prosecutor was merely arguing that the jury should infer from the lack of corroborating evidence, and defendant's history of lying about the shooting, that defendant was being untruthful when he said that Hudson reached for his waistline. The prosecutor's use of the pejorative "lie" when characterizing defendant's testimony did not render this argument improper. Cf. *People v Steanhouse*, ___ Mich App ___ ; ___ NW2d ___ (2015) (Docket No. 318329); slip op at 17.

Similarly, defendant also argues that it was improper for the prosecutor to state: "[w]e also know that the version that the defendant gave today isn't true because [Hudson] didn't even have a gun." But the prosecutor supported this assertion by reminding the jury that no other witness saw Hudson reach for his waistline, and by mentioning that a weapon was not found when Greene's van was searched. Again, the prosecutor was raising a reasonable argument based on the evidence presented at trial and was not suggesting that he was privy to special knowledge of defendant's guilt or truthfulness. See *id.*

Defendant also contends that it was improper for the prosecutor to remark, "But, does the defendant have a motive to lie? He's the one on trial. He's the one afraid to go back to prison. He got up there and lied again today." Contrary to defendant's arguments, these remarks did not deprive defendant of a fair and impartial trial. When considered in context, these remarks were not offered to improperly suggest that the prosecutor possessed some special knowledge of defendant's guilt or truthfulness. Instead, in context, the remarks appear designed to challenge defendant's credibility and to highlight the reasons defendant had for lying. As a comparison, before making these remarks, the prosecutor asked the jury to consider whether Hudson and the other witnesses had a motive to lie. Moreover, the prosecutor's argument regarding defendant's

reasons for lying was supported by the evidence. That is, defendant specifically testified at trial that he lied to police about his role in the shooting because he feared returning to prison and, from this evidence, the prosecutor could reasonably argue that defendant had a reason to "lie[] again" to the jury about his actions on the day of the shooting. We see nothing improper in this argument. For similar reasons, it was not improper for the prosecutor to tell the jury: "Don't buy into the defendant's story of self-defense. He's just trying to save himself." Again, in context, this was a permissible argument, based on the evidence, that defendant's version of events was not worthy of belief. Cf. *Steanhouse*, slip op at 17.

Next, defendant takes issue with the prosecutor's assertion that defendant's explanation for not telling the police that he acted in self-defense was "baloney." This argument was not improper given the evidence introduced at trial. That is, as noted, defendant testified that he denied involvement in the shooting when speaking with police because he did not want to go jail for a parole violation. Thus, when viewed in context, the prosecutor's comment reiterated what he argued earlier, which was that if defendant had truly acted in self-defense, he would have told the police that immediately, as a parole violation pales in comparison to assault with intent to murder. "When a defense makes an issue legally relevant, the prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence." *People v Fields*, 450 Mich 94, 116; 538 NW2d 356 (1995). And, the prosecutor was not required to confine his argument to the blandest possible terms. *Dobek*, 274 Mich App at 66.

Regarding Greene's testimony, defendant claims it was plain error for the prosecutor to state during closing argument that Green "testified truthfully as to what happened." More fully, taken in context, defendant challenges the following remarks by the prosecutor:

[Greene] . . . identified the defendant as the shooter. [Greene] was 100 percent positive. She set the scene as one of the first witnesses in the case, described where the van was in the apartment complex, described the defendant riding around on the bike with a young child, described this Impala pulling up, the defendant getting out -- or going over and walking back with the two guys from the Impala. *She testified truthfully as to what happened.*

And what did she tell you? She said that the defendant followed [Hudson] back to the van. They were right outside the van door, the sliding, open door, where her young, 11-month-old baby was inside. And they got into an argument, and she hears what the defendant said about, you ain't going to knock my cousin out -- or you ain't going to knock me out like you did my cousin, and then she sees him grab the gun and fire. No word of [Hudson] trying to threaten the defendant in any way as far as grabbing for a weapon or anything.

She was so close to the incident that she even testified she got gun powder -- and if you recall how upset she was, she thought that her baby had been shot. That's how upset she was. I think she even broke down on the stand as I recall. *She's not going to mistakenly present false facts in this case; she's going to tell you exactly what happened and who to blame.*

We see nothing improper in these arguments by the prosecutor. These comments did not imply that the prosecutor had special knowledge of the veracity of Greene's testimony, nor did they put the prestige of the prosecutor's office behind her. Rather, viewed in context, the prosecutor simply argued, based on the evidence presented, that Greene had no reason to lie and that she was worthy of belief. This was not improper. See *Thomas*, 260 Mich App at 455.

In sum, viewed in context, the prosecutor's arguments regarding witness credibility, including arguments regarding defendant's credibility, were not improper. Moreover, we note briefly that the jury was instructed that they must determine the case based on the evidence, that the jury must decide for itself which witnesses to believe, that the fact that defendant was on trial was not evidence, and that the lawyers' arguments were not evidence. Jurors are presumed to follow their instructions. *Unger*, 278 Mich App at 237. Thus, even assuming some prosecutorial error, any prejudice to defendant was cured by these instructions. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

Lastly, insofar as defendant argues that defense counsel provided ineffective assistance by failing to object to the prosecutor's remarks, this claim must fail because the prosecutor's remarks were not improper and, therefore, any objection by counsel would have been futile. "Counsel is not ineffective for failing to make a futile objection." *Thomas*, 260 Mich App at 457. Further, even assuming some impropriety by the prosecutor, as discussed, we have concluded that any potential prejudice to defendant was cured by the trial court's instructions to the jury. Consequently, defendant has not shown the prejudice required to maintain a claim of ineffective assistance of counsel. See *id.*

Affirmed.


/s/ Joel P. Hoekstra
/s/ Patrick M. Meter
/s/ Michael J. Kelly