*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MELBY SHAWN MILLIRANS,

Defendant-Appellant.

UNPUBLISHED
January 23, 2025
9:02 AM

No. 362122
Muskegon Circuit Court
LC No. 2019-004777-FC

Before: M. J. KELLY, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

A jury convicted defendant, Melby Shawn Millirans, of second-degree criminal sexual conduct (CSC-II) under MCL 750.520c(1)(a) (victim less than 13 years old). The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to serve 71 to 270 months in prison. In this appeal by right, defendant raises several evidentiary challenges, argues that the introduction into evidence of a 21-year-old conviction of sexual assault deprived him of a fair trial, and contends that his 71-month minimum sentence is disproportionate. We affirm defendant's conviction and sentence.

## I. BASIC FACTS AND PROCEEDINGS

The incident at issue occurred on July 6, 2019. Defendant's victim was AH, the minor daughter of defendant's fiancée. AH testified at defendant's trial that she was 10 years old at the time of the incident and lived with her mother and defendant. AH's mother testified that, in 2019, she had been in a live-in romantic relationship with defendant for four years.

According to AH, she, her mother, and defendant were in the upstairs bathroom when she asked her mother for help trimming her pubic hair. At first, AH asked for help shaving her armpits. AH's mother and defendant helped AH shave her armpits, but then AH asked for help shaving her pubic hair. AH's mother explained that AH was self-conscious about her pubic hair being exposed when she wore a swimsuit. According to AH, her mother refused, but defendant offered to help. AH's mother explained that she was initially not comfortable with AH trimming her pubic hair

because AH's mother thought that AH was too young. After AH insisted, AH's mother refused to perform the trimming, but offered to talk AH through the procedure. According to AH, with her mother present, AH stood in the shower as defendant trimmed her pubic hair with an electric trimmer. AH's mother explained that, at first, she alone was talking AH through how to use the trimmer, but when AH started struggling, defendant came back into the bathroom to assist.

According to AH's mother, after the trimming was complete, she told AH to take a shower, and then AH's mother and defendant left the bathroom and went downstairs. AH then came downstairs, and the family went out for dinner. According to AH, when defendant finished the trimming, AH's mother left the bathroom and went downstairs. After AH's mother left the bathroom, defendant asked AH to lie on the bed so that he could blow the hairs away to prevent infection. As AH lay on the edge of the bed, naked from the waist down, defendant knelt at the end of the bed between her legs. Defendant spread open what AH had previously referred to as her "vaginal cheeks" with his thumbs and then blew air into her vaginal area.[1] About 10 days later, for reasons that AH could not recall, she relayed the incident to her father's girlfriend, who then told her father's mother and aunt. After AH's disclosure, a report was made to Children's Protective Services (CPS).

At trial, the jury heard from Jessica Holmes, the forensic interviewer who interviewed AH at the Children's Assessment Center. Holmes testified about the forensic-interviewing process, its protocols, and ground rules. She then testified about the disclosures that AH made during her forensic interview. Muskegon County Sheriff's Detective Sergeant Tom Johnson testified that he observed the forensic-interview and that Holmes's testimony was consistent with his recollection of the interview.

Before trial, the prosecution filed a notice of intent to introduce other-acts evidence under MRE 404(b) (other-acts evidence),[2] MCL 768.27a (admissibility of certain prior sexual offenses against a minor), and several other statutes that are not relevant to this appeal. Specifically, the prosecutor sought to admit testimony contained in a 1998 CPS investigation of defendant's sexual assault of his five-year-old stepdaughter and the resulting conviction. The prosecutor also sought to admit, as an admission by a party opponent, see MRE 801(d)(2), defendant's 1998 statement that he saw his stepdaughter as a "sexual object." Defendant objected on grounds that the proposed evidence was an attempt to show that defendant had a propensity for wrongdoing and that the probative value of the evidence was substantially outweighed by the risk of unfair prejudice. Defendant argued that the current case was too dissimilar and too temporally removed from the

---

[1] At the trial, rather than ask AH to name the part of her anatomy that was touched by defendant, the prosecutor asked AH to mark a diagram that depicted a vaginal area with a highlighter, i.e., to show where defendant had touched her. Prior to trial, AH was interviewed by a forensic interviewer, Jessica Holmes, at the Children's Assessment Center and Ms. Holmes testified at trial about what AH said in that interview, including the words that AH used to describe the anatomy where she was touched.

[2] The Michigan Rules of Evidence were substantially amended on September 20, 2023, effective January 1, 2024. See ADM File No. 2021-10, 512 Mich lxiii (2023). We rely on the version of the rules in effect at the time of defendant's trial.

proposed evidence to be relevant and, therefore, that the proposed evidence would be more prejudicial than probative. A hearing was held on the matter, after which the trial court determined that the act from 1998 was similar to the current allegations to the extent that both instances involved sexual contact to the vaginal area of a minor daughter of defendant's girlfriend at the time. The court believed that these similarities were enough "to actually hit the 404(b) reasoning." The court also admitted under MRE 801(d)(2) defendant's prior statement that he saw his five-year-old stepdaughter as a sexual object.

Carol Millirans, defendant's ex-wife, testified about the 1998 incident. Carol said that she woke up at 3:33 a.m. on May 19 and found defendant in her five-year-old daughter's bed. The child's nightgown was pulled up to her neck, and defendant was positioned on his stomach with his face between the child's legs. When defendant realized that Carol saw him, he rolled over and pretended to be asleep. Retired City of Wyoming Detective Brian Hudenko investigated the 1998 incident. Det. Hudenko interviewed defendant at Pine Rest Hospital, a mental hospital, and said that defendant admitted touching the five-year-old victim's vagina with his hands and tongue. Defendant stated that he had trouble "distinguishing boundaries" and that, at the time, he saw the five-year-old child as a sexual object. Defendant also indicated that he had "done this twice."

Testifying on his own behalf, defendant asserted that he offered to help trim AH's pubic hairs to prevent AH from melting down and disrupting his day. Defendant denied that he had a sexual purpose for trimming AH's pubic hair or that he was aroused by the incident. Defendant denied that the "blowing incident" occurred. Referring to a contemporaneous child protective proceeding, defendant admitted that he took responsibility in family court for trimming the pubic hair that was outside of AH's bathing suit, but not for the other allegations in the petition filed in that matter. Defendant insisted that he was not the same man that he had been in 1998. In 1998, he was "severely mentally unstable," on "an enormous amount of psychotropic medication," was "self-medicating," and suffered from health problems related to his previous drug use. Defendant also testified that the family of AH's father had a problem with his past and tried to prevent him and AH's mother from dating.

The jury found defendant guilty of CSC-II. After defendant filed his claim of appeal in this Court, he moved this Court for a remand, requesting an evidentiary hearing on his claims of ineffective assistance of counsel. This Court denied defendant's motion without prejudice.[3]

## II. EVIDENTIARY ISSUES

Defendant contends that the trial court abused its discretion when it allowed Holmes to testify about the content of AH's forensic interview and about the forensic-interviewing process, and when it allowed a CPS worker to testify that AH's mother had a reason to lie. We will address each claim of error in turn.

---

[3] *People v Millirans*, unpublished order of the Court of Appeals, entered July 24, 2024 (Docket No. 362122).

-3-

## A. STANDARD OF REVIEW

We review de novo a trial court's interpretation and application of a court rule. *People v Comer*, 500 Mich 278, 287; 901 NW2d 552 (2017). We review for an abuse of discretion a trial court's decision to admit or exclude evidence. *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007). A trial court abuses its discretion when its decision "falls outside the range of reasonable and principled outcomes." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (quotation marks and citation omitted). A preserved, nonconstitutional evidentiary error is not grounds for reversal "unless it affirmatively appears that, more probably than not, it was outcome determinative—i.e., that it undermined the reliability of the verdict." *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014) (quotation marks and citation omitted).

We review unpreserved errors for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). To prevail under plain-error review, defendants must establish that error occurred, that the error was obvious, and that it affected their substantial rights. *Id*. at 763. An error affected substantial rights if it "affected the outcome of the lower court proceedings." *Id*.

## B. FORENSIC-INTERVIEW TESTIMONY

Defendant first argues that the trial court abused its discretion by allowing Holmes to testify about her forensic interview with AH. The prosecution asserts that the trial court properly admitted Holmes's testimony under MRE 801(d)(1)(B), which allows the admission of a prior consistent statement through a third party if certain requirements are met. MRE 801(d) provides, in relevant part:

> A statement that meets the following conditions is not hearsay:
>
> (1) *A Declarant-Witness's Prior Statement*. The declarant testifies and is subject to cross-examination about a prior statement, and the statement:
>
> * * *
>
> (B) is consistent with the declarant's testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying . . . [.]

Therefore, this Court has held that, to admit a declarant's prior consistent statement, MRE 801(d)(1)(B) requires the following:

> (1) the declarant must testify at trial and be subject to cross-examination; (2) there must be an express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony; (3) the proponent must offer a prior consistent statement that is consistent with the declarant's challenged in-court testimony; and (4) the prior consistent statement must have been made before the time that the supposed motive to falsify arose. [*People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (quotation marks and citation omitted).]

-4-

The parties dispute whether the second element was satisfied, i.e., whether there was an "express or implied charge of recent fabrication or improper influence or motive of the declarant's testimony[.]" *Id.* (quotation marks and citation omitted). The prosecution asserts that, in his opening statement and cross-examination of AH, defendant made express or implied charges of recent fabrication, improper influence or improper motive, including defendant's argument that AH had been coached by her paternal family and court personnel, thus establishing the charge of fabrication or improper influence.[4] Defendant argues that his opening statement and cross-examination of AH did not allege recent fabrication; rather, they pointed to general reasons to question AH's reliability.[5]

After reviewing defendant's opening statement, we conclude that defendant argued that AH's paternal family improperly influenced her and that the improper influence had continued for the 32 months, up to the date of trial, which opened the door to the admission of the prior consistent statement. According to defense counsel, because they knew about defendant's past CSC conviction, the paternal side of AH's family used the incident in the bathroom as an opportunity to attempt to separate AH's mother and defendant by convincing AH to say that she was assaulted. Defense counsel's cross-examination of AH also suggested her description of the incident was influenced by outsiders – defense counsel elicited affirmations from AH that her paternal grandmother, aunt, father, her father's girlfriend, and "[o]ther people in the court system" helped her to remember things over the past three years that she "did not remember accurately about that date."[6]

Regarding the timing of the statements AH made to Holmes, defendant cannot argue that it was made after the improper influence occurred where he argued in his opening statement that the influence had continued through the date her trial testimony. Even though Holmes' interview

---

[4] The trial court ruled that the prior consistent statement was admissible pursuant to MRE 801(d)(1)(B) because defense counsel had probed AH, in cross-examination, on the issue of whether she had been told what to say and whether she was influenced by others.

[5] Despite the trial court's ruling on this issue, where it found that defense counsel had argued at trial that AH's testimony had been influenced by others, in his brief on appeal defendant addresses only the issue of whether his counsel's opening statement and cross-examination of AH alleged that AH fabricated her testimony, and ignores the issue of whether he alleged undue influence.

[6] As previously noted, later in the trial during his case in chief, defendant expressly stated that, shortly after the incident, AH fabricated the portion of the story in which she said defendant asked her to lie on the bed and then sexually assaulted her. Defendant denied that portion of the incident ever occurred and alleged that AH told him she was going to make up a story about him in retaliation for his refusal to buy her a new cellphone. Had his attorney made that same argument in the opening statement, and had he cross-examined AH solely on that basis (i.e., that she created the story about the incident on the bed shortly after the incident, in retaliation) as opposed to implying that she had been told what to say as recently as the day of the trial, then the argument that MRE 801(d)(1)(B) did not allow for the admission of the prior inconsistent statement would have merit because it would have asked the jury to accept that AH fabricated the story just after it occurred, i.e., there would be no argument that it was a *recent* fabrication.

-5-

with AH occurred after she first spoke to her paternal family about the incident, the argument made by defendant was that the undue influence had started in July of 2019 and continued for the next 32 months, up through the present time, i.e., the day of trial on March 15, 2022.

Defendant cites to multiple cases from the 1970's and 1980's for the proposition that a prosecutor is not permitted to bolster a witness's testimony by referring to prior inconsistent statements of that witness, but defendant fails to mention that those cases predate the 1991 amendment to MRE 801, which added MRE 801(d)(1)(A) and (B).

Even if we were to accept defendant's argument, that the trial court abused its discretion by allowing the prosecution to present Holmes's testimony under MRE 801(d)(1)(B), reversal would nevertheless be unwarranted because it does not affirmatively appear to us that, "more probably than not, [the trial court's error] . . . undermined the reliability of the verdict." *Douglas*, 496 Mich at 566, 579 (quotation marks and citation omitted). Determining that an error undermined the reliability of the verdict requires considering "the nature of the error in light of the weight and strength of the untainted evidence." *Id*. at 579 (quotation marks and citation omitted). The allegedly tainted evidence in the present case was the testimonies of Holmes and Det. Johnson. Holmes's testimony largely corroborated AH's account of the incident. However, Holmes also added certain details to AH's account that suggested a sexual intent behind defendant's general conduct toward AH, thereby linking the July 2019 incident to the testimonies of Carol Millirans and Det. Hudenko about defendant's 1998 conviction of sexually assaulting his stepdaughter. The prosecutor referred to these additions briefly in his closing argument, suggesting that they were grooming behaviors. Det. Johnson's testimony bolstered Holmes's testimony. But even accepting defendant's argument, the prosecution's untainted evidence included the testimonies of AH, her mother, a CPS worker, Carol, and Det. Hudenko. In addition, the prosecution presented a petition and a video clip from the contemporaneous child protective proceeding against defendant and AH's mother in family court.

The record as a whole shows that the prosecutor relied heavily on evidence other than Holmes's testimony. First, he relied on evidence admitted under MCL 768.27a. The prosecutor drew parallels between defendant's 1998 offense and the charged offense in his opening statement, as well as in his closing and rebuttal arguments, and began his cross-examination of defendant with questions about the incident. In addition, during cross-examination, the prosecutor elicited from defendant that he admitted to the incident in family court, and during his rebuttal argument, the prosecutor read to the jury a portion of the petition filed in the contemporaneous child protective proceeding. The petition had been admitted into evidence without objection, and the portion of the petition that the prosecutor read essentially repeated AH's disclosures during her forensic interview. The prosecutor's express reference to Holmes's testimony regarding AH's forensic interview was brief and stressed that AH's trial testimony was consistent with what she told Holmes three years before trial.

The admission of evidence under MCL 768.27a made this case less of a credibility contest than it would have been otherwise. That evidence, as well as the admission of the petitions in the child protective proceeding, arguably served to dilute the impact of Holmes's testimony about the content of AH's forensic interview. Parallels alleged between the 1998 incident and the current offense served to vouch for AH's credibility, as did the excerpt from the petition filed in the child protective proceeding. Even if Holmes had not testified, the excerpt from the petition still placed

before the jury evidence regarding the disclosures that AH made during her forensic interview. Even if Holmes's testimony was improperly admitted, and the details that she added to AH's testimony were prejudicial, in light of the untainted testimony that vouched for AH's credibility, and considering that the prosecutor mentioned AH's testimony only briefly, it could not affirmatively be said that the trial court's erroneous admission of Holmes's testimony more probably than not affected the outcome of defendant's trial. Accordingly, reversal would not be warranted, even if we held that the trial court erred by admitting the evidence.

Defendant also argues that the trial court abused its discretion by allowing Holmes to testify about the forensic-interviewing process. Defendant contends that Holmes's testimony did little more than to vouch for AH's credibility. Alternatively, defendant claims that defense counsel rendered ineffective assistance by failing to object to the testimony. Given our resolution of defendant's first claim of error, we need not reach this issue, as Holmes's testimony about the forensic-interviewing process was offered only to provide context for her testimony about the content of the interview.

As to defendant's claim that defense counsel rendered ineffective assistance when he failed to object to Holmes's testimony regarding the forensic-interviewing process, our review of the record suggests that this was a strategic decision that allowed counsel to subject Holmes to vigorous cross-examination in an attempt to undermine her credibility. See *People v Unger*, 278 Mich App 210, 242, 253; 749 NW2d 272 (2008). This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). That counsel's strategy did not work does not necessarily amount to ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

## C. CPS WORKER'S TESTIMONY

Defendant further asserts that the trial court abused its discretion by allowing CPS worker Choe Silver to offer improper opinion testimony that invaded the province of the jury and was not based on Silver's firsthand perception. Specifically, defendant objects to Silver's affirmative answer when asked whether AH's mother had a reason to lie. We find no error.

This averment of error comes to us unpreserved; therefore, our review is for plain error affecting defendant's substantial rights. See *Carines*, 460 Mich at 764.

Under MRE 701, a lay witness may testify in the form of opinions or inferences if that testimony meets specific criteria. The testimony must be "(a) rationally based on the perception of the witness; and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." MRE 701. However, the witness's testimony must not directly comment on the credibility of another witness, *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007), or express an opinion on the ultimate issue of guilt or innocence, see *People v Fomby*, 300 Mich App 46, 48-53; 831 NW2d 887 (2013).

At trial, AH's mother implied that she did not leave AH alone with defendant. She testified that she and defendant left the bathroom together after defendant trimmed AH's pubic hair. But Silver testified that AH's mother told her that she went downstairs after defendant finished

trimming AH's pubic hair and was not sure what happened afterward. Silver answered affirmatively when asked whether AH's mother had "a motivation essentially to say that [defendant and AH] were not left alone." It is to this response that defendant objects.

Silver's affirmative response met the foundational requirements of MRE 701. It was an inference rationally based on Silver's personal knowledge of CPS policies, defendant's status as a sex offender, and statements that AH's mother made during Silver's investigation of the incident. Silver testified that, according to CPS policies, AH's mother's knowledge that defendant was a sex offender could result in her being held responsible for defendant's sexual assault of AH and in the termination of her parental rights. Given Silver's knowledge of these policies, it was reasonable for Silver to infer that AH's mother would be motivated to distance herself from actions that might give rise to the possibility of criminal liability and the termination of her parental rights. Further, we note that evidence bearing on the credibility of a witness is always relevant and Silver's testimony about the operation of these policies might be helpful to determining the credibility of AH's mother. See *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020). Silver did not directly comment on the credibility of AH's mother. Silver simply affirmed, on the basis of her knowledge of departmental policies and AH's mother's concerns regarding potential liability and the termination of her parental rights, that AH's mother had reason to lie. The jury was left to determine whether to believe AH's mother's version of events. Silver's testimony met the requirements of MRE 701, and she did not opine on the credibility of AH's mother. Therefore, defendant has not established that the trial court plainly erred by allowing the challenged testimony.

## D. PRIOR-CONVICTION TESTIMONY

Next, defendant argues that the trial court abused its discretion and violated his right to due process by admitting evidence of his 21-year-old conviction of criminal sexual conduct. Defendant contends that the prosecution's true purpose in seeking to admit the evidence was to invite the jury to conclude that, because defendant engaged in child criminal sexual conduct in the past, he must have done so again in the present case.

Defendant argues that evidence of his prior conduct was inadmissible under MRE 404(b), but he does not challenge the admissibility of the evidence under MCL 768.27a. Considering that the prosecution sought to admit the other-acts evidence under both authorities, that defendant's motion in limine challenged the admissibility of the evidence under both authorities, and that the trial court provided the jury with limiting instructions for both authorities, it seems reasonable to us to conclude that the evidence was admitted under both authorities.

MCL 768.27a provides, in relevant part, that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." "Listed offense" refers to a Tier I, II, or III offense. MCL 768.27a(2)(a); MCL 28.722(i). Both the charged offense and defendant's 1998 conviction were for Tier III offenses. Therefore, even if defendant's 1998 conviction was inadmissible under MRE 404(b), it was admissible under MCL 768.27a, subject to MRE 403, and could be "considered for its bearing on any matter to which it is relevant." MCL 768.27a.

To help courts determine whether evidence admissible under the statute should be excluded under MRE 403, our Supreme Court provided the following, nonexhaustive list of six considerations:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*People v Watkins*, 491 Mich 450, 487-488; 818 NW2d 296 (2012) (citations omitted).]

Any propensity inferences to which the evidence gives rise are weighed in favor of the evidence's probative value. *Id*. at 487.

As to the first factor, "the dissimilarity between the other acts and the charged crime," *id*., both the 1998 conduct and the current charges involved defendant's intentional, intimate touching of a child under the age of 13 years old who was the daughter of defendant's domestic partner at the time and with whom defendant lived. In both instances, the conduct occurred when the minor was lying in bed on her back with defendant positioned between her legs. Although defendant had oral sex with the victim in 1998 and AH did not allege that defendant had oral sex with her, this factual distinction between the other acts and the current charges did not make them "so dissimilar that the probative value of the evidence was outweighed by the danger of unfair prejudice." *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 255 (2016). In fact, the opposite it true – the facts of the present case are so similar to the facts of the 1998 case that this factor weighed heavily against defendant.

The second factor is "the temporal proximity of the other acts to the charged crime." *Watkins*, 491 Mich at 487. "[A] lengthy temporal proximity supports exclusion of other-acts evidence when the other acts and the charged crime lack similarities." *People v Hoskins*, 342 Mich App 194, 206; 993 NW2d 48 (2022). Defendant argues that the 21 years that passed between the 1998 offense and the present case should weigh this factor in his favor. We disagree. Given the stark similarities between defendant's prior conviction and the charged offense, this factor does not clearly weigh in favor of exclusion. *Id*.

The third factor is "the infrequency of the other acts." *Watkins*, 491 Mich at 487. In the present case, defendant indicated to Det. Hudenko in 1998 that he had assaulted his stepdaughter more than once. "Given that this was not a one-time occurrence, we cannot conclude that these other acts occurred so infrequently as to support exclusion of the evidence." *Hoskins*, 342 Mich App at 207. Following *Hoskins*, this factor does not support exclusion.

The fourth factor is "the presence of intervening acts." *Watkins*, 491 Mich at 487. In the present case, the passage of time without additional victims does not necessarily support exclusion of the 1998 evidence because defendant was incarcerated for much of that time and did not have access to child victims. See *Hoskins*, 342 Mich App at 207. This factor does not support exclusion.

The fifth factor is "the lack of reliability of the evidence supporting the occurrence of the other acts." *Watkins*, 491 Mich at 487. The fact that defendant pleaded to the 1998 sexual assault

removes any questions about the reliability of the proposed evidence. See *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014). This factor does not support exclusion.

The sixth factor is "the lack of need for evidence beyond the complainant's and the defendant's testimony." *Watkins*, 491 Mich at 487-488. This factor "asks whether the other-acts evidence is important to the prosecution's case, particularly where there is no evidence of the crime or the victim's memory has faded." *Hoskins*, 342 Mich App at 209 n 8. In such cases, evidence of prior sexual conduct can vouch for the victim's credibility. See *Duenaz*, 306 Mich App at 100. Because the evidence against the defendant in *Hoskins* came primarily from the victim's testimony, this Court concluded that the need for evidence beyond the victim's testimony weighed in favor of admission of the other-acts evidence. The same is true in the present case. The admissible testimony against defendant came primarily from AH. Defendant attempted to rebut her testimony regarding the assault that occurred on the bed by arguing that AH's mother previously stated that she and defendant went downstairs after the incident in the bathroom. So, defendant's argument at trial was that the matter was a credibility contest between AH and defendant. AH's testimony could have been sufficient to obtain a conviction. See MCL 750.520h. However, under the circumstances, the other-acts evidence was critical to the prosecution's case, i.e., defendant cannot argue at trial that AH fabricated the story about the incident on the bed and then successfully argue on appeal that the other acts evidence was not important to the prosecutor's case. Therefore, the need for the other-acts evidence does not weigh in favor of its exclusion.

The foregoing illustrates that none of the six factors to consider when applying MRE 403 evidence offered under MCL 768.27a weigh in favor of barring the evidence. To the extent that evidence of defendant's 1998 sexual assault of his stepdaughter gives rise to a propensity inference, that inference must be weighed in favor of the evidence's probative value rather than its prejudicial effect. See *Watkins*, 441 Mich at 487. Accordingly, the proposed evidence of defendant's 1998 sexual conduct with a minor was admissible under MCL 768.27a. Given this conclusion, we need not consider its admissibility under MRE 404(b).

## E. CUMULATIVE ERROR

Defendant contends that the cumulative effect of the claimed errors undermined his credibility, bolstered the credibility of AH, and compounded prejudice against him. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal . . . ." *Dobek*, 274 Mich App at 106. In the present case, defendant has not established one of his claimed evidentiary errors, but as previously indicated, even if we held that evidence was improperly admitted under MRE 801(d)(1)(B), we would deem that error harmless. Because there are no cumulative errors, there is no cumulative effect of errors meriting reversal. See *id*.

## III. DISPROPORTIONATE SENTENCE

Defendant contends that his 71-month minimum sentence was not reasonable or proportionate. However, defendant has failed to provide this Court with a copy of his PSIR as MCL 769.34(8)(b) and MCR 7.212(C)(7) require, and despite this Court's specific request on May 30, 2024 that he do so. Accordingly, we consider this issue waived, and we need not address it. See *People v Rodriguez*, 212 Mich App 351, 355; 538 NW2d 42 (1995). Regardless, even when

considered on the merits, defendant has not met his heavy burden of demonstrating that his sentence, which was within the sentencing guidelines, was disproportionate. See *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023) (opinion by BOLDEN, J.); *People v Klungle*, ___ Mich App ___, ___; ___ NW3d ____ (2024) (Docket Nos. 364125 and 367795); slip op at 6.

Affirmed.

/s/ Michael J. Kelly
/s/ Anica Letica
/s/ Randy J. Wallace