*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DORION ABRAHAM MARTINEZ,

Defendant-Appellant.

UNPUBLISHED
April 14, 2026
10:14 AM

No. 371239
Berrien Circuit Court
LC No. 2022-003348-FH

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for (1) two counts of third-degree child abuse, MCL 750.136b(5); (2) two counts of fourth-degree child abuse, MCL 750.136b(7); and (3) four counts of domestic violence-second offense, MCL 750.81(4). The trial court sentenced defendant to serve concurrent sentences of 30 days in jail for each conviction and an additional two years' probation for his third-degree child abuse convictions. We affirm.

## I. FACTS

This case arises out of defendant's daughters' disclosures of physical abuse. Relevant to the issues on appeal: (1) defense counsel did not challenge the empanelment of a juror who had experienced child abuse 53 years prior, and (2) the children's mother testified about an incident of domestic violence that occurred in 2018, when she was still married to defendant. Defendant was convicted and sentenced, as stated earlier. Defendant now appeals.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues that defense counsel was ineffective for failing to challenge Juror 12's empanelment. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Because defendant did not raise this issue in a motion for a new trial or evidentiary hearing filed in the trial court, or in a motion to remand for an evidentiary hearing filed in this Court, it is

not preserved for appellate review. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). When a claim of ineffective assistance of counsel is not preserved, "our review is limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

## B. ANALYSIS

In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court established a two-prong test that a defendant must meet to prove that his or her counsel's assistance was so defective as to require a new trial. The test is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. [*Id.*]

Stated more simply, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. To show that a counsel's performance was deficient, a defendant "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. "The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id*

Because there are countless ways to provide effective assistance in each case, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotation marks and citation omitted). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012) (quotation marks and citation omitted), vacated in part on other grounds 493 Mich 864 (2012).

In this case, before Juror 12 was voir dired, defense counsel exercised all five of his peremptory challenges and successfully moved for two jurors to be excused for cause on the basis that they were biased in favor of the prosecution. When Juror 12 was asked if there was anything that he thought the court might need to know, he informed the court that he was a victim of child abuse. The following dialog ensued:

> [*The Trial Court*]: [W]ould you be able to set aside that experience and judge this case based upon the evidence presented in court here on this case?

> [*Juror 12*]: That I couldn't tell you for sure.

[*The Trial Court*]: Do you believe that you'd be affected by your previously being a victim of that offense?

[*Juror 12*]: Could very well.

* * *

[*The Prosecutor*]: Now you brought up some, some personal experiences. I've kind of mentioned it before. Now you know you can't fully set aside everything that's happened in your past cause it makes you who you are today.

[*Juror 12*]: Umm, from the charges and, and I'm not judging what the charge is, but child abuse that I suffered in 1965 I remember it very vividly. And results and everything that led up to where I am today.

[*The Prosecutor*]: Umm, I don't wanna dive too deep into that. I just wanna know, how old were you when that happened?

[*Juror 12*]: Five.

[*The Prosecutor*]: Five, okay. Umm, do you think you could listen to the testimony of a witness or a victim?

[*Juror 12*]: I couldn't tell you certain for certain.

[*The Prosecutor*]: Okay. Can you tell me for certain whether or not that you think that that prior incident or those prior incidents that happened with you when you were five would affect you today?

[*Juror 12*]: Could very well, I mean because ah, what I've learned from that is that I just absolutely cannot accept the situation that I went through, yes there is rooms prepared, you know, you, you take care of your kids. You, you know take each spanking, each spanking, you get to take privileges away, then you do that. I did that with my own children. But there's a mind where you lose control and that I just absolutely cannot fathom. I absolutely cannot stand it. I won't tolerate it period.

[*The Prosecutor*]: Okay. Thank you for your honesty. Your Honor, I have no further questions.

[*The Trial Court*]: [Defense counsel].

[*Defense Counsel*]: Yes, thank you. Ah, juror [12], I, I'm gonna say I ah, I 100 percent heard everything you said. And I understand why you feel that way. Umm, the only concern, just please again be honest about this, umm, is what you went through is that gonna make you think maybe it's better to be safe than sorry? You know, maybe I'm not sure but—

[*Juror 12*]:  I would think so because, umm, not to be real graphic but my father was gonna take me over to town when I was five, and momma wanted him to go, wanted me to go with him and I guess I did I, to this day I don't know what I did wrong, but he cut a switch off a tree and started at my head and went to my ankles and threw my clothes.  I remember going to the lawyer's office.  I remember the house.  I remember going to court.

[*Defense Counsel*]:  All right.  Umm—

[*Juror 12*]:  This has been, what, 43 years ago, no—

[*Defense Counsel*]:  Yeah—

[*Juror 12*]:  —more than that, 53 years ago.

[*Defense Counsel*]: Long time.  Umm, do you think then when you're listening to the testimony or you're making a decision while the prosecutors proved the case.  You think that's gonna make you more likely than the normal person defined that the, the, the children are credible or that my clients guilty?

[*Juror 12*]: No, I mean not really.  I mean I can, I can pretty well judge with common sense, if you will.

[*Defense Counsel*]: All right.  Well, you know that's the only thing, can you fairly hear the evidence?  Do you think you could fairly hear the evidence?

[*Juror 12*]: That's where I have a question, is listening to the children.

[*Defense Counsel*]: Okay.  And, and what, what do you think would be your, what do you think you might do or, or how do you think you might think, or how would that affect you?

[*Juror 12*]: That I couldn't tell you for certain.  I mean I would think, umm, any kind of abuse above just a little bit of a spanking or anything like that is to me unjust.

[*Defense Counsel*]: All right, even if someone has a, a constitutional right to spank.  Do you still think that's unjust?

[*Juror 12*]: No, no, no, no.  I'm saying spanking is well within your rights as a parent.  But it's when you spank five, six, seven times in one session then that's a little overkill.  It was, if the child doesn't get it right with his first time, then you need to have a little talk with the child.  Take some privileges away.

[*Defense Counsel*]: Sure.

[*Juror 12*]: So and so forth.

-4-

[*Defense Counsel*]: I don't disagree with it. Let me but let me ask this. Umm, let's say you're not sure. Not sure if the prosecutors [have] proven his case beyond a reasonable doubt, umm, you know you're right in the middle. Do you think that because you went through this, and it's certainly terrible and it's still in your mind that clear, do you think that's gonna make you more likely to find [defendant] guilty, umm, because you went through that?

[*Juror 12*]: If I'm in the middle of the road, no.

[*Defense Counsel*]: Okay.

[*Juror 12*]: It doesn't give me the justification to competent to tell him that he's guilty.

[*Defense Counsel*]: Now, so maybe I, I guess, do you think you could judge the witness, the children fairly if they're testifying?

[*Juror 12*]: Ah, there again I couldn't tell you 100 percent definitely I could, or I couldn't.

[*Defense Counsel*]: All right. Okay. I think I see what the issue is. Thank you, sir.

[*Juror 12*]: It just really, it just depends you know. It just depends on I guess how the children come across, if you will.

[*Defense Counsel*]: Okay. Thank you, sir.

[*Juror 12*]: Uh hmm.

[*The Trial Court*]: Challenges for cause, [prosecutor].

[*The Prosecutor*]: No, your Honor.

[*The Trial Court*]: Challenges for cause, [defense counsel].

[*Defense Counsel*]: Ah, no, your Honor. I think the juror actually gave the standard every juror would do.

[*The Trial Court*]: All right. Ah, well there are no more peremptories. So we have our jury.

"The decisions on what witnesses to call, whether and how to conduct cross-examination, *what jurors to accept or strike*, what trial motions should be made, *and all other strategic and tactical decisions are the exclusive province of the lawyer after consultation with his client*." *People v Robinson*, 154 Mich App 92, 95; 397 NW2d 229 (1986) (quotation marks and citation omitted). "Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions." *Unger*, 278 Mich App at 258.

-5-

Because a reviewing court "cannot see the jurors or listen to their answers to voir dire questions . . . this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror." *Id*. (quotation marks and citation omitted). "A lawyer's hunches, based on his observations, may be as valid as any method of choosing a jury." *Robinson*, 154 Mich App at 95. Moreover, "when citizens have been sworn to tell the truth, and testify under oath that they can be impartial, the initial presumption is that they are honoring their oath and are being truthful." *People v DeLisle*, 202 Mich App 658, 663; 509 NW2d 885 (1993).

Although Juror 12 stated that his past experience with child abuse could possibly affect his ability to impartially hear the children's testimonies in this case, he clearly indicated that: (1) he could "pretty well judge with common sense," and (2) his past experiences would not make him more likely to find defendant guilty if he was "in the middle of the road . . . ." Moreover, when asked if defense counsel had any challenges for cause, he stated, "I think the juror actually gave the standard every juror would do." Defense counsel thoroughly analyzed and voir dired each juror that was empaneled in this case, as evidenced by his use of all five peremptory challenges as well as two successful motions to excuse jurors for cause. Defense counsel was clearly aware of how to excuse a juror for cause, yet he chose not to do so in this instance. Defense counsel had the benefit of seeing Juror 12's "facial expressions, body language, and manner of answering questions." *Unger*, 278 Mich App at 258. "We will not substitute our judgment for that of defendant's counsel, nor will we use the benefit of hindsight to assess counsel's performance." *Id*.

### III.     PRIOR ACT EVIDENCE PURSUANT TO MCL 768.27b

Defendant further argues that the admission of other acts evidence violated the separation of powers and rendered defendant's trial unfair. We disagree.

### C.  PRESERVATION AND STANDARD OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). In this case, the prosecution filed a notice regarding the other-acts evidence pursuant to MCL 768.27b. But defendant did not challenge the admission of the other-acts evidence in the trial court; therefore, this issue is not preserved for appellate review. See *id*. When a challenge to the admission of other-acts evidence is not preserved, "the issue becomes whether defendant has shown plain error affecting his substantial rights, which requires a showing of prejudice." *People v Dobek*, 274 Mich App 58, 87; 732 NW2d 546 (2007). In such instances, "reversal is warranted only when the plain error results in a conviction of an actually innocent defendant or when the error seriously affects the fairness, integrity, or public reputation of judicial proceedings independently of a defendant's innocence." *Id*. Additionally, "this Court reviews de novo whether a rule or statute precludes admission of evidence as a matter of law." *People v Roper*, 286 Mich App 77, 91; 777 NW2d 483 (2009).

### D.  ANALYSIS

MCL 768.27b(1) provides, in pertinent part, as follows:

[I]n a criminal action in which the defendant is accused of an offense involving domestic violence . . . evidence of the defendant's commission of other acts of

domestic violence . . . is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

In this case, the other-acts evidence that defendant refers to is his ex-wife's testimony about an incident of domestic violence that occurred between them in 2018. Defendant does not argue that the other-acts evidence falls outside the purview of MCL 768.27b. Instead, defendant argues that MCL 768.27b directly authorizes what MRE 404(b)[1] explicitly prohibits, thereby violating the separation of powers doctrine and interfering with the Michigan Supreme Court's constitutional authority to make rules governing the practice and procedures of the courts. The Michigan Supreme Court decided this exact issue in *People v Mack*, 493 Mich 1, 3; 825 NW2d 541 (2012), which reasoned as follows:

> In *People v Watkins*, 491 Mich 450; 818 NW2d 296 (2012), this Court addressed an issue very similar to that presented here. The statute at issue in *Watkins*, MCL 768.27a, addresses the admissibility of evidence that a defendant accused of certain sexual offenses against a minor has committed other sexual offenses against a minor. Though that statute also in certain circumstances expanded the admissibility of such evidence beyond the scope permitted by MRE 404(b)(1), we determined that it did not infringe on this Court's authority under Const 1963, art 6, § 5. We hold that the reasoning of *Watkins* fully controls in this case. For the reasons articulated in *Watkins*, we conclude that MCL 768.27b does not infringe on this Court's authority to establish rules of "practice and procedure" under Const 1963, art 6, § 5. Likewise, the dissent's arguments here—the same as those advanced by the dissent in *Watkins*—are unpersuasive for the reasons articulated by the Court in *Watkins*.

We are bound by Michigan Supreme Court precedent that permits evidence regarding defendant's commission of other domestic violence acts where, as here, defendant is accused of an offense involving domestic violence. MCL 768.27b; *People v Beasley*, 239 Mich App 548, 556; 609 NW2d 581 (2000). Accordingly, we deny relief on this issue. See *id*.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace

---

[1] MRE 404b(1) states that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."